### THE STATE OF KANSAS v. JOSEPH W. REDDICK.

1. EVIDENCE—*Admissions made by Party in custody.* Statements or admissions made by a party arrested for an alleged crime, and in custody of a proper officer, though without process, which statements are not brought out by threats, promises, intimidation, or artifice, or by any inducement whatever, may be given in evidence against him on his trial.

2. WITNESS—*Cross-examination—Opinion—Judgment.* Where a witness testifies to certain events in the history of the accused, the object of which is to show a tendency to bring on a diseased condition of the brain, the witness may on cross-examination be asked to state what in his judgment was the effect upon the mind of the defendant of the injuries described. The question is proper, not only to test the capacity of the witness, but as asking further about facts elicited from witness on his examination in chief. On cross-examination great latitude is necessarily indulged, that the intelligence of the witness, his powers of discernment, and capacity to form a correct judgment may be submitted to the jury, that they may have an opportunity of determining the value of his testimony.

3. ——— *Experts—rule of Competency—Insanity.* On questions of science, skill, or trade, persons of skill, sometimes called *experts*, are permitted to give their opinions in evidence; and when the question before the jury is, whether a particular act of the prisoner was an act of *insanity*, a physician and surgeon of many years' practice and experience, who has studied psychological medicine, and has had experience in the incipiency of mental diseases, may give his opinion whether the manner in which the act was done, the circumstances of the absence or presence of apparent motive, and the whole details of the transaction would be considered by scientific men in determining the question of sanity or insanity, although the witness had not shown that he had made diseases of the mind a special study.

4. INSTRUCTIONS—INSANITY—*Habitual unsoundness of mind—Presumption of law.* Where habitual unsoundness of mind is once shown to exist, it is presumed to continue to exist until the presumption is rebutted by competent proof, beyond a reasonable doubt.

5. —————— *When defendant cannot complain of instructions.* When liberal and favorable instructions upon a given question are asked by a defendant, and are given to the jury as asked, he will not be heard to complain of such instructions; and if the State claims no error by reason thereof, the court will not determine whether such instructions are correct or not.

6. VERDICT—*In cases of Homicide must specify the degree of guilt.* An information which in one count charges murder in the first degree, charges all the different degrees of felonious homicide, including murder in the first and second degrees, and manslaughter in its four different degrees. A verdict that finds the prisoner guilty as charged, without specifying of what degree of the offense he is found guilty, is not such a verdict as will authorize a judgment for murder in the first degree; nor is the court authorized to look outside the verdict to ascertain that the jury intended by such verdict a verdict of murder in the first degree.

## *Appeal from Leavenworth Criminal Court.*

THE defendant *Reddick* was charged by information with the crime of murder in the first degree. There was only one count in the information, and in that he was charged with having " unlawfully, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought," killed and murdered one John T. Lykens. He was tried before a jury at the December Term, 1870, of the Criminal Court of Leavenworth county. The State called Joseph Anderson to testify regarding certain admissions made by defendant. Defendant objected, alleging that such admissions, if any, were made under *duress*, but the court admitted them. Several questions arose respecting the cross-examination of certain witnesses, all of which are stated in the opinion of the court. Many of the instructions asked by defendant, were refused by

the court below; but as the court here declines to determine the question of their correctness they are omitted. The jury returned a verdict as follows: "We the jury find the prisoner guilty as charged." Motions in arrest of judgment and for a new trial were overruled, and the sentence of death was pronounced upon the defendant. From this judgment he appeals to this court.

*J. C. Hemingray,* for appellant:

1. It was error to admit the testimony of witness Anderson, because defendant was under duress of imprisonment, as well as *per minas,* there being no legal restraint shown. *Peaple v. McMahan,* 15 N. Y., 384.

2. The question put to Doct. Bonifant by counsel for the State was not proper upon cross-examination. The defense had made no examination to call for such a question, and had not produced the witness as an expert. And it does not appear that the witness had any experience in the management and treatment of the insane, or any special knowledge of the causes and manifestations of insanity, and was therefore not an expert. *Com. v. Rich,* 14 Gray, 335; *Com. v. Fairbanks,* 2 Ḻ—.ᴇn, 511; Whart. & Stille, § 86, *et seq.;* Ray's Med. Jur., §§ 343, 607, *et seq.*

And the question put to Doct. Thomas during his cross-examination, was incompetent, and ought not to have been allowed.

It was error also to admit the question put to Doct. Brock, because he had not made diseases of the mind a special study.

3. The instructions asked by defendant respecting the question of insanity ought to have been given.

" Where unsoundness of mind has been established at a period antecedent to any given time, such unsoundness of mind is presumed to continue to exist until that presumption is rebutted by competent proof, and soundness of mind established beyond a reasonable doubt." 3 Starkie, 1284, and note *c*.

4. The court erred in overruling the motion for a new trial. The verdict was so defective that it would not support the sentence or judgment. Sec. 239 of the crim. code, provides, that, " Upon the trial of any indictment or information for any offense, where by law there may be conviction of different degrees of such offense, the jury, if they convict the defendant, shall specify in their verdict of what degree of the offense they find the defendant guilty." *State v. Upton*, 20 Mo., 400.

The court erred also in not arresting the judgment. The verdict was bad; and besides, the information does not state a public offense. It fails to allege that defendant *intended* to kill deceased.

*Burnes & Campbell*, also for appellant:

The verdict ought to be set aside because it is contrary to the *terms* of the statute, and because it is of doubtful meaning. Its meaning does not appear on its face; nor does the law apply the meaning. It finds the prisoner " guilty as charged." Under the statute and practice the prisoner *is charged with every grade of* killing, from the lowest grade of manslaughter to the highest grade of murder; (§ 121, crim. code.) If not, then he can be convicted of that with which he is not charged. The jury must *find* and " *specify* in their verdict" of what degree the defendant is guilty. The court cannot supply this defect, and the law does not supply it.

*A. L. Williams*, Attorney General, for the State:

1. There was no error in admitting Anderson's testimony. Defendant's statements were not brought out by threats, promises, artifice, fear, duress, or by virtue of any kind of inducements on the part of witness. Wharton Cr. Law, §§ 685, 686, 689, 690, 691, 692, 694, and authorities there cited.

2. Every man is presumed to be sane. Insanity, when set up as a defense, is an affirmative fact, to be proved by the defendant, and so far from being the duty of the State to prove sanity *"beyond a reasonable doubt,"* it is necessary for the defendant to show *insanity* BEYOND A REASONABLE DOUBT to entitle him to an acquittal. That this is the settled doctrine of American courts, see— Whar. Crim: Law, §§ 55, 711; *Rex v. Stokes*, 3 C. & K., 188; *Rex v. Taylor*, 4 Cox, C. C., 155; *State v. Bringer*, 5 Ala., 244; *State v. Starke*, 1 Strobhart, 479; *State v. Huting*, 6 Bennett, 464; *State v. Starling*, 6 Jones, N. C., 471; *State v. Spencer*, 1 Zabriskie, 202.

3. The verdict is sufficient. The intention of the law, in declaring that the jury should specify the degree of which they convicted the defendant, was, that the court might be able with certainty to pronounce the judgment of the court, and when, by other means, this certainty is attained, the object of the law is satisfied. From the instructions of the court it is morally and legally impossible to doubt what the degree was of which the jury convicted the defendant. He was not charged, as he might have been under § 123 of criminal code, with different degrees of the offense of murder, but only with murder in the first degree. That was the sole charge against him, and the court told the jury that if they found him guilty of murder in the first degree they would return a verdict finding him " guilty as charged."

The State v. Reddick.

The Missouri cases do not show the facts in the cases, and the ruling there might have been, and probably was, correct as applied to those particular cases, and yet they would not necessarily be the law of this case.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellant was tried for murder at the December Term of the Criminal Court of Leavenworth county, and sentence of death was pronounced upon him by the court. In bringing the record to this court, his counsel urges many errors, which will be considered in their order, so far as they are deemed important.

I. It is claimed that the testimony of Joseph Anderson, as to certain statements made to him by the prisoner was improperly admitted, because when such statements were

1. Admissions; when admissible.

made the appellant was in custody of an officer, but not held by any legal process, and was therefore under duress; and because a mob was gathered around the place of his confinement, threatening violence to him. The record does not disclose the state of facts claimed by counsel for appellant. It is true that he was in the custody of a proper officer, without process, and that there were quite a number of persons about the place of his confinement; but no such threats or indications of violence are shown as would tend in the slightest to intimidate the prisoner. Nor does it seem that he was intimidated. The statements of the prisoner testified to were not brought out by threats, promises, intimidation or artifice, or by any inducements on the part of the witness or any one else.

II. The next objection is that a certain question, put by the State to Doct. Bonifant was not proper on cross-

examination.   The witness·was introduced by the de-
fense, and testified that he had been a phy-
sician and surgeon since 1848-9; had known
the defendant eighteen or twenty years; that he had,
when six or seven years of age, been kicked on the head
by a colt, whereby his skull was broken, and about a
teaspoonful of his brains lost.   Witness further testified
that about four years ago defendant was stabbed through
the skull near the place of the first wound, and that a
small fragment of the knife blade remained in the head;
that in both of these instances witness had attended upon
him as physician and surgeon.   On the cross-examination
the counsel for the State asked him this question : " State
what in your judgment was the effect of the wounds
received by defendant, as described, upon the mind of
the defendant ?"   This was proper cross-examination.
The object of the defense was to show by the testimony
of the witness that certain events in the history of the
prisoner had a tendency to bring on a diseased condition
of the brain, and the State had a right not only to test
the capacity of the witness by such a question, but as
also asking further about facts already elicited from the
witness by his examination in chief.

  Doct. Thomas was introduced by the defense as an
expert.   On his cross-examination, the counsel for the
State put a hypothetical question intended to cover all
the circumstances detailed by the witnesses on the trial,
and asking from these facts whether the witness would
consider a person so acting a person of unsound mind.
It is claimed that the hypothesis falls far short of includ-
ing all the facts in testimony in the case; but in what
particular has not been pointed out by the counsel for
the appellant.   Nor have we been able to perceive.   Nor
is it now material to determine whether such is the fact,

because on cross-examination great latitude is necessarily indulged, that the intelligence of the witness, his powers of discernment, and capacity to form a correct judgment may be submitted to the consideration of the jury before whom he has testified, that they may have an opportunity of determining the value of his testimony, and for these reasons, the question asked was not a departure from the rules regulating the cross-examination of witnesses.

III. The State introduced Dr. Brock, who testified that he was a physician and surgeon of fourteen years practice and experience, had studied psychological medicine some, and had had experience in the incipiency of mental diseases. The witness then testified as to certain methods of investigating the sanity or insanity of a person and was then asked this question: "Would not the manner in which the act was done, the circumstances of the case, the absence or presence of apparent motive, and the whole details of the transaction be considered by scientific men in determining the question of sanity or insanity?" This question was objected to because the witness had not shown that he had made diseases of the mind a special study. The objection was overruled, and we think correctly. He had brought himself within the rule admitting his testimony as an expert. See 1 Grenleaf Ev., § 440; Wharton's Cr. L., §§ 45, 46, *et seq.* The extent of the witness' knowledge of a particular branch of medical science only goes to the credibility of his testimony.

3. Expert: competency; insanity.

IV. This brings us to the consideration of the instructions given and refused upon the trial; and the subject is embarrassing, not from any inherent difficulty in the questions presented, but as the defendant excepted to all the charge of the court, and on the other hand asked a great number himself, and ex-

4. Instructions; general discussions;

cepted to the ruling of the court in refusing to give those that were not given.    Of the forty-five instructions asked, twelve were given as asked; and more than that number of the others were embodied in the charge of the court, and their repetition was not only unnecessary, but would have been improper.    Some of the others were abstract propositions of law, not tending to assist the jury in the duty of passing upon the guilt or innocence of the accused, but calculated rather to embarrass them in their deliberations.    For instance, of what value would it have been to the ascertainment of the great fact of guilt or innocence, to have had thrown into their minds the metaphysical question as to whether the law asks revenge for offenses against its injunctions or not, as was demanded in one of the instructions asked?    Again, still other of the instructions asked and refused were mainly correct expositions of the law, but needed some modifications to make them unobjectionable in the case on trial. The purpose of one of these instructions, is, to lay down as law, that where unsoundness of mind is once shown —INSANITY; habitual un- soundness; pre- sumption of law. to exist, it is presumed to continue to exist until the presumption is rebutted by competent proof, beyond a reasonable doubt.    Now, if this instruction had limited the unsoundness of mind once shown to exist to *habitual* unsoundness, it would have been good law; but temporary insanity does not draw after it any such presumption.    (Whar. Cr. L., § 56.)    Drunkenness is temporary unsoundness of mind. Does it draw after it any such presumption?    We fail to perceive any error in the instructions of the court prejudicial to the defendant, or in the refusal of the court to give those asked.

There is one point however, which demands more particular attention from us.    One of the grounds of defense

5. When defendant cannot complain of instructions.

in this case was insanity; and two questions of grave importance are raised in the argument and are pressed with great earnestness by the counsel for the appellant. These are—*first:* Must the fact of insanity when set up as a defense be established by a preponderance of testimony? and *second:* What, if any, degree of unsoundness of mind will excuse the commission of an alleged crime? On the first of these points the law given by the court below to the jury is as follows:

" That before the jury could convict they must find that said Reddick was at the time a person of sound memory and discretion. The law presumes every man to be sane, and that he is responsible for what he does. If however in any case, testimony be introduced tending to show insanity, then the sanity of the accused must be shown by the State, as any other fact in the case, to the satisfaction of the jury. Each and every allegation going to make up the offenses I have described to you must be proved to your satisfaction beyond a reasonable doubt; and the burden of proof is upon the State; and if you have a reasonable doubt of any such material fact in either of the offenses named you are bound to acquit the defendant of such offense."

" If the jury find that he committed the homicide, the prisoner is not guilty unless he was of sound mind at the time of the offense charged; and the jury to convict the prisoner of the offense charged must find, beyond a reasonable doubt, the existence of every element necessary to constitute murder in the first degree."

This last paragraph was given at the instance of defendant's counsel; and while it was not necessary that every element necessary to constitute murder in the first degree should be proved beyond a reasonable doubt to convict, because the defendant might have been convicted of murder in the second degree, or manslaughter, without proof of facts necessary to convict of murder in the first degree, still the error is not one of which defendant can

complain, as it was given at his instance and was in his favor.

The charge and instructions of the court as set out above are as favorable to the defendant, on the point of insanity, and the measure and burden of proof therein, as can be claimed under the new rule recently adopted in the courts of some of the States. The substance of the charge is, that sanity, if attacked by testimony, is to be proved by the State as any other fact, to the satisfaction of the jury, and each and every fact must be proved beyond a reasonable doubt. This is laying down the rule as broadly as it has been announced anywhere, and as plainly. It is a great innovation on the decisions on this questions almost uniformly made till within a recent period. The rule having thus been laid down most favorable to the defendant, he cannot complain; and the State is claiming no error; so that the really embarrassing question argued with so much skill by the counsel for the appellant is not before this court, and no opinion is expressed thereon. We prefer in deciding a matter of so much importance, to do it in a case where the question is made in the record, and its decision a necessity.

On the point as to what if any unsoundness of mind will excuse the commission of an alleged crime, we do not propose to comment at any length. The charge of the court on this point seems to have been carefully drawn, and fairly guarded alike the rights of the prisoner and the interests of society, so far as the same can be done in the present state of knowledge. "The results of "scientific investigations on this intricate subject are so "imperfect as to render it very difficult to establish any "general rule by which judicial proceedings of a criminal "nature should be governed, when the defense of insanity

"is interposed." (*Hopps v. People*, 31 Ill., 385.) No certain or definite rule can be deduced from the decisions, or from the writings of men learned in psychological science. It is to be hoped that at sometime such tests may be established as will be unerring in their nature. At present the most that can be done is to so shape the law in each particular case, that all may feel assured that there is no danger of an insane man being punished, or a person made to suffer for an offense to which his mind never assented. Such a result we think was insured in the charge of the court in this case. See *Commonwealth v. Rogers*, 7 Met., (Mass.) 500, with reference to which the charge of the court on this point seems to have been drawn.

V. On the motion for a new trial two grounds of error only are alleged in this court. The first one does not appear in the record. The recital of a fact in a motion for a new trial does not establish it as a fact, or make it a part of the record. If it did we should approve the course of the court below on that matter.

A second ground for a new trial is, that the verdict is not such that a judgment can be based upon it. The 6. VERDICT: in cases of homicide must specify the degree of guilt. verdict is in these words: "*We the jury find the prisoner guilty as charged.*" The objection to the verdict is, that it does not specify of what degree of the offense the jury find the defendant guilty, as is required by § 239 of the criminal code. That section is as follows:

"Upon the trial of any indictment or information for any offense, where by law there may be conviction of different degrees of such offense, the jury, if they convict the defendant, shall specify in their verdict of what degree of the offense they find the defendant guilty."

The statute is plain and positive. A long train of decisions in other States have held such a defect fatal. *McGee v. State*, 8 Mo., 495; *State v. Upton*, 20 Mo., 400;

*State v. Moran*, 7 Iowa, 230; *State v. Redman*, 17 Iowa, 329; *Cobia v. State*, 16 Ala., 783; *Zully v. People*, 6 Mich., 273; *Mitchell v. State*, 5 Yerger, 350; *Kirby v. State*, 7 Yerger, 259; *McPherson v. State*, 9 Yerger, 280; *Dick v. State*, 3 Ohio St., 89; *Parke v. State*, id., 101; *Slaughter v. State*, 24 Texas, 410; *Thomas v. State*, 5 Miss., 32; *The State v. Dowd*, 19 Conn., 388, are among these decisions, and are deemed the most important. These cases have presented the question in almost every phase of it, and if authority and positive statutory provisions amount to anything must be deemed conclusive in this case, and the defect held fatal. We have been unable to find in any State having statutes similar to our own, a decision to break the current of the authorities cited.

We are referred to the instructions of the court to show that murder in the first degree is what the jury intended by the verdict; and we find it so. But the verdict must speak for itself. If we are to go elsewhere for it, then the verdict is made up by construction and comparison, not by the words of the jury, made under the solemn sanction of their oaths. We might as well look to the evidence as to the instructions. We cannot by construction say a man must die upon a verdict of "guilty as charged," upon an information that contains in its one charge of murder in the first degree, charges also of murder in the second degree, and manslaughter in four degrees, and of either of which he might have been found guilty under the same information, and for either of which a lighter punishment is inflicted. The information is good. Because the verdict is not sufficient to base a judgment upon, the judgment is reversed, and a new trial awarded, as asked by appellant.

VALENTINE, J., concurring.

BREWER, J., having been of counsel in the court below, did not sit in the case.