# JANUARY TERM, 1881.

## PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,

The State of Kansas v. William Jennings.

Homicide; *Court to Inform Defendant of the Verdict, etc., before Judgment.* Where a defendant is charged on information with committing murder in the first degree, and "the jury find the defendant guilty in manner and form as charged in the information," without otherwise stating the degree of the offense of which they find the defendant guilty, and no motion for a new trial is made, and the court sentences the defendant as for murder in the first degree, and the record of the case does not show that the defendant was informed by the court of the verdict of the jury, and asked whether he had any legal cause to show why judgment should not be pronounced against him, *held,* that the judgment of the court below must be set aside, and the cause remanded with the order that the defendant be again taken before the court below for sentence and judgment, and for such other and further proceedings as may be properly had in the case, and that before sentence or judgment shall be again pronounced against him, he shall " be informed by the court of the verdict of the jury, and asked whether he have any legal cause to show why judgment should not be pronounced against him." (Comp. Laws of 1879, p. 761, § 248.)

*Appeal from Allen District Court.*

At the March Term, 1880, of the district court, *William Jennings* was tried upon an information charging him with murder in the first degree in killing one Herschel McLaughlin, in Allen county, on or about the 12th day of December, 1879. The jury returned a verdict in the following form, to wit: "We, the jury, find the defendant guilty in manner and form as charged in the information." The court sentenced the defendant as for murder in the first degree. From this sentence

he appealed to this court. September 20, 1880, the case was argued and submitted, and decided, November 9, 1880. Counsel for appellant filed a motion for a rehearing, which was granted, and a reargument had, December 6, 1880. The second decision herein was made January 5, 1881. The opinions first filed are contained in the opinion, *infra.*

*Cates & Keplinger*, for appellant :

1. Whether the verdict is void, or voidable only, must be determined by a reference to its face and to the law, without regard to the result of the decision on any further trial. The court, in its opinion, claims that new trials cannot be granted after void verdicts without violating the constitutional provision, that "no person shall be twice put in jeopardy for the same offense;" and therefore the cases wherein new trials were ordered because of such verdicts, are cited as authorities for holding such verdicts *not* void. This position is, we think, unfounded. In all the cases referred to by the court, the defendant himself insisted upon a new trial. Whether a verdict be void, voidable, or valid, the court may set it aside at the defendant's request, without any danger that the constitution will stand in the way of a second trial. Where a strictly valid verdict is set aside at the instance of the defendant, a new trial may be ordered. (4 Ill. 463.) *A fortiori*, would this be true in case of a voidable verdict, or of one utterly void ? There are some instances where courts have ordered new trials after precisely such verdicts as in this case, against the wish, or, at least, without any request, on the part of the defendant. (30 Wis. 437; 16 Ala. 781 ; 3 Ohio St. 89.) Now if courts cannot set aside verdicts which are utterly void, and grant new trials against the wish of defendants, they certainly cannot do so in case of verdicts which are valid, or voidable only. Therefore, where after such verdicts courts have ordered new trials, it *could not* be that they did so because they considered such verdicts *not* void, and it *may* have been that they held so for the very reason that they did consider them *utterly void.* The bear-

ing which the distinction between verdicts which are void and those voidable only has upon the power of courts to order new trials, may, we think, be thus stated generally :

If the verdict be utterly void, this would be a mistrial; there is no option on the part of either party, and the proceedings must be ignored or set aside, and the prisoner retried. If the verdict be voidable only, and the prisoner does not except, there is no option with the court, and it must sentence as upon a valid verdict. If the prisoner excepts to treating the verdict as valid, there is no option with the court, which must treat it precisely as if it were utterly void, and order a new trial. If instead of excepting absolutely, as he may, if he will, he may except to considering the verdict as valid, but at the same time state a condition upon which he will waive the error. Of this the state cannot complain. The prisoner might have absolutely refused to waive the error. If the state is unwilling to accept the waiver with the condition, it must treat the exception as absolute.

Applying these principles, we say that this verdict was at least voidable, if not void. If void, defendant could not waive the defect, and the court erred in sentencing him at all. If voidable, he was willing to waive the defect upon condition that he should be sentenced for manslaughter in the fourth degree, and the court erred in treating his conditional waiver as absolute. If accepted at all, his waiver should have been accepted with the condition upon which it was made. If not so received, it should not have been received at all, and the exception should have been considered as absolute.

The court seems to hold that new trials cannot be ordered after void verdicts, for the reason that in such cases the prisoner receives no legal benefit from a new trial. To escape hanging under a void verdict is, one would think, sufficient benefit. If it be said there was no such danger, and therefore no such benefit, we reply that society receives a benefit in such cases, and this is sufficient ground for putting in jeopardy a supposed criminal who has not been there before.

If he were in jeopardy under the void verdict, his escape therefrom would be sufficient benefit. If he were not, he cannot complain if the court speedily places him in jeopardy. Under the highest authority on criminal law, this verdict is a nullity: 3 Whar. Cr. Law, § 3198; 1 Bishop on Cr. Law, § 844 (673); 1 Bishop on Cr. Pro., § 842.

But independent of all authority, and tested by reason solely, are not such verdicts nullities? It is not every statement by a jury that constitutes a verdict. We look to the statute to see what a statement by a jury must be to constitute a verdict. In cases of this kind we find that the presence of two essential ingredients or elements is required, and one of these is no less essential than the other. If either be wanting, it is only a half-verdict—a mere statement by the jury, which does not rise to the dignity of a verdict. In this case, one of these essentials is wholly wanting, and for that reason it is not a verdict. The evident purpose of the statute is, that the verdict in and of itself, in cases of this kind, shall furnish the sole guide to the court in determining the offense of which the prisoner is guilty and the sentence that should be pronounced. Neither of those matters can be determined in this case, simply because this is not a verdict.

2. But conceding that the verdict was irregular only, and not void, what sentence should be pronounced? A jury in order to convict must be satisfied beyond a reasonable doubt, but when the court comes to pronounce sentence, it must be satisfied beyond *all* doubt what offense it is of which the jury found the defendant guilty. To adopt any other rule would fritter away that high degree of certainty which our liberal and merciful system of jurisprudence requires should precede punishment. The opinion confesses that the verdict and information leave *some* doubt as to the degree of defendant's guilt. To relieve that last doubt, this court goes beyond the verdict and information. But in *The State v. Reddick,* 7 Kas. 143, it had been decided in case of a similar verdict that this cannot be done. After a full consideration of the authorities, and relying chiefly upon the above case and

that of *The State v. Huber*, 8 Kas. 447, we decided to ask sentence for manslaughter in the fourth degree instead of a new trial, because we thought such sentence better for the defendant than the hazard of a new trial.

If the verdict and the information leave it uncertain of what offense the jury found the prisoner guilty, what right had the court to pronounce sentence for the highest crime included in the information? If the court does not sentence as requested by the defendant for manslaughter in the fourth degree, the presumption of innocence requires that the sentence should be for a simple assault, that being the lowest degree of offense included in the information. (30 Wis. 438; 3 Ohio St. 85.)

3. Was the defect waived by failure to move for a new trial? If the verdict were void, of course not. But suppose it were irregular only: what then? If an irregularity, under all the authorities it was one of the gravest character. Even though guilty, the defendant had one right left—that of being tried, convicted and executed according to law. It was the duty of the state to follow the forms which it had itself prescribed, and that too, without suggestion from the defendant. That duty the state signally failed to perform. Before and after sentence the defendant called attention to the fact, and objected to a conviction otherwise than according to law, and entered his protest upon the record. That judgment carries with it wherever it goes, and brings with it into this court, that protest stamped upon its forehead as a mark of its infirmity. It is a double judgment, convicting both the state and the defendant of the same crime—that of taking life contrary to law. It establishes the guilt of the latter, not beyond a reasonable doubt, while it fixes the guilt of the former beyond all doubt. Where, as in this case, both error and exception appear in the face of the judgment, wherein was the exception not timely? and if timely excepted to, wherein was the irregularity better than a nullity? and why should not the court have treated the verdict *as a nullity* within the rule as laid down by Bishop, *supra?* and how could failure to move

for a new trial waive an error which occurred not until after the time for moving for a new trial had passed?

We rely chiefly upon the prior decisions of our own supreme court as establishing clearly and beyond all question, both expressly and by necessary implication, that this precise error under consideration is of such a character as not to be waived by a failure to move for a new trial. We call attention to the cases where this form of verdict has been considered by this court, all the more confidently, from the fact that the decision which we now ask to be reconsidered takes special pains to indorse in the fullest sense those decisions to which we now refer. (7 Kas. 143; 8 id. 447; also, 16 Ala. 781; 28 Cal. 456.)

No motion for a new trial would have reached the defect complained of in the verdict. Every work on practice shows that the words, "verdict contrary to law," apply only to cases where what the verdict says contradicts the law, and not to cases where the verdict omits to speak at all as to some essential matter upon which the law requires that it should speak. The verdict in this case may speak in accordance with the law and the evidence, so far as it speaks at all, but there is a total omission as to one material matter. Therefore, failure to move for a new trial would not have reached this defect, and the omission to do so was not a waiver.

There is also another defect in the record in this case. The statute provides for a trial proper which ends with the rendition of the verdict. Still, sentence cannot be pronounced. There must yet be a second hearing — a trial *sub modo*. The court must inform the defendant of the verdict. He must inquire of him, &c. Then, *if* no sufficient cause be alleged, *or appear to the court*, then, but not until then, the court can pronounce sentence. This second hearing is clearly and expressly a condition precedent, embodied in the clause granting power to sentence. Whoever would exercise the power, should show affirmatively the performance of the condition. This step in the proceedings is of as vital importance as any other. Our statute inherits it from the common law. We have no more

right to pass it lightly by than the arraignment, or plea, or trial proper. What would be said of a record which omitted any one of those steps? Upon this point the authorities are uniform — so far at least as capital cases are concerned — that the record must show a compliance with this provison. (*Messner v. The People,* 45 N. Y. 1; *Safford v. The People,* 1 Park. [N. Y.] Cr. 474; *James v. The State,* 45 Miss. 572; *Hamilton v. Commonwealth,* 16 Pa. St. 129; *Perry v. The State,* 43 Ala. 21; *Dougherty v. Commonwealth,* 69 Pa. St. 286.) The remedy in such case would be to remand, not for a new trial, but for a proper sentence according to law. (*Keech v. The State,* 15 Fla. 609; *Dodge v. The People,* 4 Neb. 221.) We do not claim that the record is void on this account, but voidable only. Of course this defect was not waived by a failure to move for a new trial.

The sentence is defective in yet another particular. The sentence is, or should be, the voice of the law. It orders the prisoner to be hanged at such time as the governor may appoint. It should be at such time *after the expiration of one year,* as the governor may appoint.

The opinion of the court was delivered by

VALENTINE, J.: This case was originally submitted to this court on the written briefs of counsel, without any oral argument being made. The brief for the state is immaterial. The briefs for the defendant are as follows (court and title omitted):

"Defendant was sentenced as for murder in the first degree, on a verdict of 'guilty as charged.' We cite 8 Kas. 447, but more especially 7 Kas. 143, as conclusive. The defendant has already had a valid trial, and the verdict is not a nullity. It will support a sentence. Otherwise, *habeas corpus* would lie.

"We ask that he be remanded to receive the highest sentence *necessarily* intended by the jury, viz.: manslaughter in the fourth degree. The jury *must* have intended this much; they *may* have intended more, and they *may not.*

CATES & KEPLINGER."

(*Court and title omitted.*) "The indictment in this case charged the defendant with murder in the first degree, and therefore charged him with all the different degrees of felonious homicide, including murder in the first and second degrees. The verdict of the jury found him guilty in manner and form as charged. The court sentenced him to suffer the penalty affixed to murder in the first degree, and rendered judgment for murder in the first degree against him. We contend that the judgment of the court below was erroneous, and cite, *The State v. Reddick*, 7 Kas., and authorities therein cited; Crim. Code, § 239; 17 Kas. 402; 7 Iowa, 236; 58 Me. 564; 3 Ohio St. 89, 101; 16 Ala. 781; 17 Ala. 618; 9 Yerg. 279; 7 Yerg. 279.            MURRAY & SMITH,
          *Attorneys for Defendant.*"

Upon the record and the briefs of counsel, the court decided the case, affirming the judgment of the court below, and the following opinion of the court, and dissenting opinion of the Chief Justice, were filed in the case, to wit:

"The opinion of the court was delivered by

"VALENTINE, J.: The defendant was prosecuted on an information for murder in the first degree. The jury found the defendant guilty, by a verdict in the following form (omitting title), to wit:

"We, the jury, find the defendant guilty in manner and form as charged in the information.'

"The defendant was sentenced by the court as for murder in the first degree. No motion was made for a new trial, or in arrest of judgment, but the defendant duly excepted to the sentence imposed upon him, on the ground that the verdict was not sufficient to sustain such a sentence. And whether the verdict is sufficient or not, is the only question now presented to this court. That such a verdict is insufficient and voidable when attacked by a motion for a new trial, has long ago been held by this court. (*The State v. Reddick*, 7 Kas. 143, 154; *The State v. Huber*, 8 Kas. 447.) But whether it is insufficient if not attacked by motion for a new trial, or whether it is absolutely void or not, and if not void, what sentence should be pronounced upon it, has never before been presented to this court. In prior cases this court may have spoken of such a verdict as though it were void; but the language was of course used with reference to the circumstances of the particular case then under consideration; and

the judgment of this court in the case or cases formerly before it was rendered as though the verdict were not void. The judgment of this court in such case or cases was, that the defendant should have a new trial. But if the verdict in such case or cases was void (absolutely and in fact), then the defendant was virtually acquitted; for as he had already been once in jeopardy, he could not again be put in jeopardy. If he had been once acquitted of the offense in any form, either by the direct or unmistakable avowal of the verdict, or by its indirect and implied legal effect, he could not afterward waive such acquittal, nor could the court set it aside, so that he might again be tried or might again be put in jeopardy. A defendant can never be twice put in jeopardy for the same offense, except with his own consent, and he cannot consent, except where he is to gain some legal benefit or advantage by such consent. He can consent to a new trial or to being again put in jeopardy for the purpose of having a valid verdict against him set aside, for by such a thing he gains a legal advantage. But he cannot consent to a new trial or to being again put in jeopardy in order to procure the setting aside of a void verdict, for by such a thing he derives no legal benefit whatever.

"We must, then, not consider said verdict as void, but as valid; and then comes the question, What does it mean? What sentence, if any, should be pronounced upon it? We cannot, of course, grant a new trial, for the defendant does not ask for such a thing, and we cannot again place him in jeopardy against his consent. We must therefore construe the verdict as best we can, and determine what sentence, if any, it will require.

"Now as the information clearly charged the defendant with being guilty of murder in the first degree, and as the jury in their verdict "find the defendant guilty in manner and form as charged in the information," there can be but little doubt as to what the jury intended, or as to what the verdict means. But the court also charged the jury, previously to their finding their verdict, that if they found the defendant guilty of murder in the first degree, the form of their verdict should be just such as the jury afterward in fact used. And the court also gave the jury a written form of verdict for murder in the second degree, and also for each degree of manslaughter. This makes it clear beyond all doubt what the jury intended to find, and what they did in fact find. They in fact found the defendant guilty of murder in the first degree. As the

defendant did not ask for a new trial, the court did not err in sentencing him as for murder in the first degree. The defendant waived the irregularity in the form of the verdict, by not asking for a new trial.

"Before closing this opinion, we might say that we adhere strictly to the former decisions of this court with reference to verdicts in murder cases, but we do not think that such decisions control this case.

"The judgment of the court below will be affirmed.

"BREWER, J., concurring.

"HORTON, C. J., *dissenting:* I dissent. Since the explicit declaration of this court in the cases of *The State v. Reddick*, 7 Kas. 143, and *The State v. Huber*, 8 Kas. 447, that upon the trial under an information for an offense where by law there may be a conviction of different degrees of the offense, it is the duty of the jury, if they convict, to specify in their verdict of what degree of the offense they find the defendant guilty, there is no reasonable excuse for a trial court to accept a verdict in a capital case like the foregoing, of "guilty as charged." If a defendant obtains an unjust advantage by such a verdict, it is the fault or carelessness of the trial court, or of the prosecuting attorney. While I do not think such a verdict void, or a nullity, yet I am of the opinion that the verdict must speak for itself, and that we cannot go to the evidence or the instructions to ascertain its meaning. Under such a verdict, it seems to me that the punishment to be inflicted ought to be for the lowest degree of the offense included in such a finding, rather than the highest. Especially do I think that this ought to be the rule, where the highest degree of the offense demands the infliction of the death penalty. I am unwilling to say that the defendant must die upon the verdict rendered."

It will be noticed that the court in its opinion virtually assumed that the verdict upon which the defendant was sentenced was not void; and as counsel for the defendant and the dissenting Chief Justice admitted that the verdict was not void, this course seemed to be entirely proper. It would have been useless indeed to discuss what was already admitted. The court, however, attempted in the opinion to show that this court had not in its previous decisions held that such verdicts are void, but that in effect it had really held that

they are valid; and then follows in the opinion of the court, the following words, to wit: "We must, then, not consider said verdict as void, but as valid;" and why should we not consider all such verdicts as valid, until properly set aside for irregularity? Such a verdict is a general finding against the defendant of every fact, and of everything stated or charged against him in the information; and in the present case the information clearly and beyond all question charges the defendant with committing murder in the first degree. In this state a defendant can be convicted only of what he is in terms charged with; and the information or indictment must set forth "*the facts* constituting the offense" with which he is charged, and this must be done "in plain and concise language, without repetition." (Cr. Code, § 103.) If it be desired that the defendant shall be convicted of murder in the first degree, the indictment or information must charge that offense against him, *and must set forth the facts constituting such offense.* An ordinary common-law indictment for murder would not be sufficient in this state for murder in the first degree. In this our laws differ from the laws of some of the other states. Of course, in states where a common-law indictment is sufficient for murder or felonious homicide in all its degrees, and such an indictment is used, it would be absolutely necessary that the jury should find the degree of which they believed the defendant to be guilty; for no court could know, from a general verdict of guilty, and from an ordinary common-law indictment for murder, that murder in the first degree was intended to be found by the jury. But where the indictment or information is required to state the facts constituting the offense, as in this state, and when the indictment or information does set forth the facts, and charges murder in the first degree, as the information in this case does; and where it states facts which undoubtedly constitute murder in the first degree, as the information in this case does; and the jury then find "the defendant guilty in manner and form as charged in the information," they unquestionably, by all rules of language and of interpretation, find the defendant

guilty of committing murder in the first degree. There can be no escape from this conclusion. And there is no necessity for going elsewhere than to the verdict and the information to know this; although, in the present case, other portions of the record also show, and show beyond all question, that the jury intended to find the defendant guilty of murder in the first degree. In all cases where a pleading states the facts, a general finding thereon and in favor of its truth is equivalent to full special findings of the truth of all the facts set forth and alleged therein. In the present case the general verdict of " guilty in manner and form as charged in the information," is equivalent to full special findings against the defendant of all the facts stated or alleged against him, and that he is guilty of everything charged against him in the information. And he is charged with committing murder in the first degree. With respect to the effect of general findings in civil cases, see *Knaggs v. Mastin*, 9 Kas. 532; *Bixby v. Bailey*, 11 Kas. 359; *Winstead v. Standeford*, 21 Kas. 270. With respect to general verdicts in criminal cases, see *Carlton v. Commonwealth*, 46 Mass. (5 Metc.) 532; *Commonwealth v. Birdsall*, 69 Pa. St. 482; *State v. Tuller*, 34 Conn. 282; *Dean v. State*, 43 Ga. 218. Many other cases might be cited, but these are deemed to be sufficient.

Assuming, then, that the verdict in the present case is not void, or waiving that question for the present, what should the court below have done in the case? That the verdict is irregular in not stating *specifically* (as required by § 239 of the criminal code) that the defendant was guilty of murder in the first degree, (just what it in fact did state in *general terms*,) must be admitted; and if the defendant had asked for a new trial, on the ground of such irregularity, the court below should and would unquestionably have granted it. That a new trial will be granted under such circumstances, is in effect the sum and substance of nearly all the decisions upon this question. In quite all the cases involving this question, the defendant asked for a new trial, and the appellate court simply ordered that it should be granted him. (*The State v.*

*Reddick*, 7 Kas. 144, and cases there cited; *The State v. Huber*, 8 Kas. 447.) And it has seldom happened that any court has awarded a new trial against the wishes of the defendant or without his consent, and such a proceeding is (or rather would be if resorted to) against all reason and against nearly all authority. Even the cases of *Dick v. The State*, 3 Ohio St. 89, and *Hogan v. The State*, 30 Wis. 428, so confidently relied on by the defendant, do not show that the defendant did not ask for a new trial. Besides, in both of these cases, the decisions of the appellate courts were *against* the trial courts, by *divided* appellate courts, and by a *bare majority* of the judges in each of the appellate courts. In the Ohio case, both Ranney and Thurman, the ablest of the judges, dissented from the decision of the other three judges. In the Wisconsin case, the indictment did not show that the defendant was guilty of murder in the first degree, nor even show, by apt and proper averments, what the degree of the offense was, of which it attempted to allege that the defendant was guilty.

It may be that in some cases the appellate court, after setting aside a judgment *at the defendant's request*, which judgment was *not void* but only voidable, would have the power to grant a new trial, although the defendant had not asked for it in the court below, and some of the authorities would seem to indicate that this might be done; but upon this question we do not now desire to express any opinion. A judgment, however, rendered upon nothing, or rendered upon an absolutely void verdict, or upon anything else which is absolutely void, would be itself void. A judgment rendered upon a void thing, would be virtually rendered upon nothing; it would be given without jurisdiction, and having nothing to stand upon, would itself be void. And here I would reiterate the substance of what was said in the former opinion of this court in this case concerning jeopardy. That statement concerning jeopardy in the former opinion might, in some cases, need explanation, but generally it will be found to be correct. A defendant can never be put in jeopardy a

second time for the same offense, except with his own consent; and generally, he can consent only where he obtains some legal benefit by consenting. And jeopardy always commences in all cases at least as early as the final submission of the case to the jury, unless some unforeseen event, not under the control of the court or the prosecution, intervenes and presents a reasonable barrier, in the due administration of justice, to the rendering of a legal verdict, and such a verdict, is not rendered. In the present case, nothing intervened to reasonably prevent a legal and valid verdict from being given. No person connected with the court or with this case became sick or absent, and the jury did not fail to agree upon a verdict. A verdict was in fact rendered and nothing probably prevented this verdict from being made regular in every respect, except an error of the court below in instructing the jury. And so far as the record of this case shows, the defendant has never yet consented to be again put in jeopardy, or to be again tried for the same offense. He did not object to the verdict, or ask to have it set aside, but merely objected to being sentenced upon it as for murder in the first degree. Nor did he consent to a discharge of the jury. Indeed, he has not done anything in the court below which might reasonably be construed into a waiver of his right to plead "once in jeopardy." On the oral argument, however, of the present motion for a rehearing of the case in this court, the defendant's counsel asked for a new trial. And this appears to be the only consent that the defendant has ever given, either expressly or impliedly, to be again placed in jeopardy or for a new trial. We shall not however in this place consider his right to now ask for a new trial; but shall here consider the question whether the court below erred in rendering the judgment which it did upon the verdict of the jury. Assuming that the verdict is not void, then the only reasonable judgment that could be rendered in the case would be for either the highest or the lowest offense included and charged in the information. There can be no good reason for selecting any intermediate offense charged, upon which, or for

which to sentence the defendant. Murder in the first degree is the highest offense charged in the present information, and a simple assault is the lowest. If it were possible for a person to commit an attempt to commit an assault, then that would be the lowest, but we suppose that such a thing is impossible; for an assault is itself only an attempt to commit some other offense. The information under consideration charges the offense of murder in the first degree; but in this single charge are also included murder in the second degree, manslaughter in four degrees, assault with intent to commit each of those offenses, assault with intent to commit great bodily injury, assault and battery, and a simple assault. Under the information, the jury might have found the defendant guilty of any one of these offenses. (See *State v. O'Kane*, 23 Kas. 244, for a case where a defendant was found guilty of assault and battery under an information charging murder in the first degree.) In finding the defendant guilty of any one of these offenses, the jury must necessarily find him guilty of all the lower offenses necessarily included in the higher; and a general verdict of guilty as charged in the information, is necessarily a verdict that he is guilty of every offense charged or included in the information. Such a verdict must surely be a verdict that the defendant is guilty of murder in the first degree, and though irregular, it will sustain a sentence for murder in the first degree; but if it will not, then it must necessarily be void, so as not to sustain any sentence, or else it must be capable of sustaining a sentence for a simple assault only—the lowest offense charged in the information. And in either case, the present sentence and the present imprisonment of the defendant in the penitentiary must be illegal and void; and *habeas corpus* is a proper remedy for his discharge. If the verdict is void, or if it will sustain a sentence only for the lowest offense charged in the information, which is a simple assault, then he ought to be released from the penitentiary on *habeas corpus;* for he cannot be legally imprisoned in the penitentiary on a void verdict, or for a simple assault, or even for an

assault and battery. The court has no jurisdiction to imprison him in the penitentiary in such a case. But in his original brief filed in this court, he asked to be sentenced for manslaughter in the fourth degree. According to the argument made in this case on the motion for a rehearing, he not only asked this, in this court, but he had also asked it in the court below at the time he was sentenced. Now why did he not ask to be sentenced for a simple assault only, or for an assault and battery, or for an assault with the intent to commit some one of the other offenses charged in the information? Why did he not ask to be sentenced for an offense lower than manslaughter in the fourth degree? Why did he ask to be sentenced for so high an offense, when, according to his own theory, he cannot legally be sentenced for anything higher than a simple assault, the lowest offense charged in the information? Clearly, if the verdict is sufficient to sustain a sentence for manslaughter in the fourth degree, it is sufficient to sustain a sentence for murder in the first degree. In the cases of *Fitzgerrold v. The People*, 37 N. Y. 413, and *Kennedy v. The People*, 39 N. Y. 245, the court of appeals of New York held that such a verdict would sustain a sentence for murder in the first degree. In the case of *Johnson v. The Commonwealth*, 24 Pa. St. 386, the supreme court of Pennsylvania held that such a verdict would sustain a sentence for murder in the second degree, *which was the highest offense charged in the indictment.* In this last case cited, the court say in their opinion, that "The cases of *The Commonwealth v. Earle*, 1 Whar. 525, and *Commonwealth v. Miller*, Lewis's Crim. Law, 398, 401, show that where the indictment charges the murder to have been perpetrated 'by means of poison' or 'by lying in wait,' a verdict of 'guilty in manner and form as the prisoner stands indicted,' does 'ascertain' the murder to be of the first degree;" (p. 389.) In the case of *Conkey v. The People*, 5 Park. (N. Y.) Cr. 32, it was held that a verdict finding "the prisoner at the bar guilty of the offense charged in the indictment," would sustain a sentence for the highest grade of the offense charged. The case of *Harman v. The Commonwealth*,

42—24 KAS.

12 Serg. & R. 69, is to the same effect. Indeed, the authorities are generally to this effect; and this is so, even where the different offenses are charged in different counts. (Wharton's Cr. Law, §§ 3176 to 3178, 418, 3208, 3297.) And while the court will generally, upon a general verdict of guilty, sentence for the highest grade of the offense charged in any count of the indictment, yet it may in some cases impose a distinct sentence upon each count of the indictment. (*Commonwealth v. Birdsall,* 69 Pa. St. 482.) See also the cases heretofore cited with respect to general verdicts in criminal cases.

The verdict in the present case was unquestionably intended by the jury to be a verdict for murder in the first degree; and if the defendant was dissatisfied with it, he could have had it set aside, and a new trial granted, merely by asking for it. But he refused to ask for it, and in so doing took a risk which no person charged with murder in the first degree, and convicted, and liable to be sentenced upon the verdict to suffer *death* for his crime, should ever take. But this may perhaps seem like mere *clap-trap,* to speak of *death* as a punishment for murder in the first degree; for no person has ever yet been executed, under our present laws, for murder in any degree, and probably no person ever will be. Our present laws upon this subject have been in force for nearly nine years. (Comp. Laws 1879, p. 762, §§ 259 to 262.) The decisions, however, in the cases of *The State v. Reddick,* 7 Kas. 143, and *The State v. Huber,* 8 Kas. 447, were rendered under our former laws, when defendants, who were properly convicted and sentenced for murder in the first degree, were executed.

The defendant, by his counsel, now asks and urges that this court shall set aside the judgment of the court below, and grant him a new trial; and if the new trial cannot be granted, he still urges that we shall set aside the judgment of the court below, so as to place the defendant back in the same situation and condition in which he was prior to the rendering of such judgment, and subsequent to the rendering of the verdict; and he urges this upon the ground, among others,

that the court below failed to inform him of the verdict of the jury, and to ask him whether he had any legal cause to show why judgment should not be pronounced against him. It is true that the record fails to show that this was done. The record shows that the defendant excepted to the sentence, on the ground that the verdict was not sufficient to sustain such a sentence; but it does not in any other manner show that the defendant was informed as to what the verdict was, or that he had any opportunity extended to him to show cause why judgment should not be pronounced against him. We have, with great doubts and many misgivings, come to the conclusion to grant this last request of the defendant. The authorities seem to sustain such a course. See *Dodge v. The People*, 4 Neb. 221, 233; *Keech v. The State*, 15 Fla. 592, 609; *James v. The State*, 45 Miss. 572, 580; *Perry v. The State*, 43 Ala. 21; *Safford v. The People*, 1 Park. (N. Y.) Cr. 474, 476; *Messner v. The People*, 45 N. Y. 1; *Hamilton v. Commonwealth*, 16 Pa. St. 129; *Dougherty v. Commonwealth*, 69 Pa. St. 286.

We wish to confine this decision within the particular facts and circumstances of this case. Therefore, such decision will be as follows:

Where a defendant is charged on information with committing murder in the first degree, and "the jury find the defendant guilty in manner and form as charged in the information," without otherwise stating the degree of the offense of which they find him guilty, and no motion for a new trial is made, and the court sentences him as for murder in the first degree, and the record of the case does not show that he was informed by the court of the verdict of the jury, and asked whether he had any legal cause to show why judgment should not be pronounced against him, it will be held by the supreme court that the judgment of the court below must be set aside, and the cause remanded with the order that the defendant be again taken before the court below for sentence and judgment, and for such other and further proceedings as may be properly had in the case; and that before sentence or judgment shall be again pronounced against him,

he shall "be informed by the court of the verdict of the jury, and asked whether he have any legal cause to show why judgment should not be pronounced against him." (Comp. Laws 1879, p. 761, § 248.)

The effect of this decision we think will be, that the defendant will obtain a new trial in the court below. The judgment of the district court will be reversed as above indicated, and the defendant will be returned from the penitentiary and delivered over to the jailer of Allen county, there to abide the further order of that court.

HORTON, C. J.: I concur in the order reversing the judgment of the district court, but do not concur in all the views expressed by my associates. This order gives the defendant opportunity, under § 276 of the criminal code, to apply for a new trial, as such application can be made at any time before judgment, and under the decisions in *The State v. Reddick*, 7 Kas. 143, and *The State v. Huber*, 8 Kas. 447, even as interpreted (and in my opinion restricted and modified) by the remarks of my associates, the district court will be in duty bound, upon a motion for a new trial by defendant, to grant another trial. On the original presentation of this case to this court, I said that I did not think the judgment ought to stand; but at that time it seemed to me that punishment might be inflicted upon the defendant for the lowest degree of the offense included in the finding of the jury. There are some authorities to that effect. A more careful consideration of the whole subject, since the reargument before us, leads me to have grave doubts of the validity of the verdict to sustain any judgment. Aside from the decisions of a few states, the reasoning of which is in conflict with the views of this court expressed in *The State v. Reddick*, supra, and *The State v. Huber*, supra, the weight of authority seems to me to be in favor of the doctrine, that where the statute requires a designation of a degree, or the assessment of a punishment, a general verdict of "guilty as charged," without such designation or assessment, is a nullity, or at least so defective and

uncertain that no sentence can be rendered thereon. (Wharton on Crim. Law, § 3196; Bishop on Crim. Law, § 673; 1 Bishop on Crim. Pro., § 842, and the cases cited therein; *Hogan v. The State*, 30 Wis. 437; *Cobia v. The State*, 16 Ala. 781; *Dick v. The State*, 3 Ohio St. 89.)

BREWER, J., *concurring:* I concurred in the decision of this case in the first instance, and did so for reasons stated in the present opinion written by Mr. Justice VALENTINE. The opinion in the Reddick case never seemed to me right. I concurred in following it in the Huber case, upon the ground of *stare decisis*. But where an information alleges certain facts, a general verdict seems to me equivalent to a finding that all those facts are true. Suppose, to this information, defendant had pleaded "guilty:" what would such plea admit, and what sentence could be pronounced? When the plea is "not guilty," and the jury find that he is guilty, is not that finding as broad and comprehensive as a plea of guilty? But I do not care to discuss the question. I wish simply to state the reasons for my concurrence. I am willing to abide by the decisions in the Reddick and Huber cases whenever the exact question in them is presented, but I think that going a step beyond would be simply heaping error on error.

I also, with some hesitation, concur in the order setting aside the judgment and remanding the defendant for a new sentence. I think that the section of the statute referred to is obligatory; that it is error to disregard it, and that the fact that the defendant was informed of the verdict, etc., should appear upon the record. If the record was perfectly silent in this respect, the question would not be so doubtful; but it is not a very strained inference from its language to hold that he was informed of the verdict and given an opportunity to show cause why judgment should not be pronounced. Still, as this is a grave offense, and the punishment the highest known to the law, it is probably right that the order be made setting aside the judgment.