## THE STATE OF KANSAS v. OTTO MILLER.

INJUNCTION — *Enforcement against Receiver — Operation of Railroad.* An action was begun in the United States circuit court in which a receiver was appointed to take possession of and operate a railroad. After that action was begun, and before the receiver was appointed, an ejectment action was brought by a landowner against the railroad company in the district court, alleging that payment for right-of-way had not been made by the railroad company; and a temporary order of injunction was granted, restraining the company from operating the road over his land, which was about the middle of the road, but no effort was made to enforce the order until the road and property had passed into the custody of the federal court. The receiver was afterward attached for contempt of the state court, charging that he had violated the injunction, but at a time when he was operating the road as receiver. *Held,* That the receiver was entitled to the possession and control of the entire property, and that the order of injunction ought not to be enforced against him.

*Appeal from Harper District Court.*

OTTO MILLER was convicted of contempt. He appeals. The facts are stated in the opinion.

*L. Houk, W. M. Whitelaw,* and *Geo. A. Snelling,* for appellant:

The appellant contends that the order appointing him receiver is a full protection to him against the proceedings for contempt. The suit in the federal court was commenced in 1890, or at least it was pending in 1890. So when W. T. Peck instituted his suit, in July, 1893, the federal court had complete jurisdiction of the parties and the subject-matter, and acquired dominion and custody of the property of the railroad company on the appointment of the receiver on August 7, 1893. The state court had no jurisdiction until the commencement of the suit by Peck, July 24, 1893, and never at any time acquired dominion and custody of any of the property of the railroad company. See High, Rec., § 739. See, also, High, Rec., §§ 50–60, 370*b; Safford v. The People,* 85 Ill. 558; *Ball v. Tompkins,* 41 Fed. Rep. 486; *E. T. V. &*

*G. Rld. Co. v. A. & F. Rld. Co.*, 49 id. 608; *Sharon v. Hill,*
36 id. 354; *R. G. Rld. Co. v. Vinet,* 132 U. S. 478; *C. T. Co.
v. S. A. & A. Rld. Co.*, 57 Fed. Rep. 3; *Wilmer v. Railway
Co.*, 2 Meyer's Fed. Dec., ch. 7, §§ 294–303.

The appellant is protected by reason of the fact that the
United States circuit court for Kansas first acquired jurisdic-
tion *in personam* by the service of its process, and by ap-
pearance of the parties, and pleading, and is the only court
that has seized the property, which it has done through its
receiver.

We think that the trial court erred in its finding of guilty,
in overruling appellant's motion for a new trial, and in its
final judgment and sentence; that the order of the federal
court appointing appellant receiver afforded him full protec-
tion against any proceeding for contempt, and that the judg-
ment of the trial court should be reversed and the appellant
discharged.

*John T. Little,* attorney general, and *T. J. Beebe,* county at-
torney, for The State; *J. P. Grove,* of counsel:

Counsel for Miller argue that the federal court was the
first to acquire jurisdiction of the matter in controversy, or
the *res,* and that, following a well-known principle of law or
usage of courts, the said court would retain jurisdiction to
the end.    There is no controversy between counsel for Miller
and the state as to that principle or usage; but our conten-
tion is, that the *res* or subject of controversy in the federal
court and that in the state court are not the same; therefore,
the principle or usage has no application.

In the state court, in the original suit, the subject of con-
troversy was the right of the Hutchinson & Southern Railroad
Company to continue in the possession and use and occupa-
tion of a certain tract of land; really a suit in ejectment, to
try the title to a tract of realty, and incidentally the right of
defendant company to use the same as right-of-way for its
railroad pending the decision of the court on the merits of
the case.

The *res* or matter in controversy in the federal court is, apparently, the manner of operating the whole line by E. E. Wise and H. A. Christie, and was brought before the controversy between Peck and the Hutchinson & Southern Railroad Company had been dreamed of. Therefore, as the case in the federal court is between different parties from that in the state court — Peck is not a party to the controversy in the federal court, nor interested in the question as to whether Christie and Wise (E. E.) managed the business of the road well, or ill — and about an entirely different subject of controversy, it would make no difference whether the federal court or the state court "acquired dominion" of the property first. The federal court has never acquired nor assumed jurisdiction of the subject-matter of the controversy in the case of Peck against the Hutchinson & Southern Railroad Company, and could not. The record shows conclusively that Peck is a resident of Harper county, Kansas, and that the Hutchinson & Southern Railroad Company is a corporation organized and existing under the laws of Kansas — a domestic corporation. So the federal court could not acquire jurisdiction of the controversy between them about the ownership of a tract of land situate in Harper county, Kansas.

This disposes, as we think, of the whole theory of the defense of Miller, even if he had been acting in good faith.

Without further adverting to the matter, we desire simply to say, that each and every case referred to by counsel for Miller is where the court first acquiring jurisdiction of the thing in controversy retained it to the end. That principle would sustain the state court in retaining the controversy between Peck and the Hutchinson & Southern Railroad Company to the end, and incidentally would enable it to enforce all of its orders made in the action. High, Inj., § 1428; *Safford v. The People,* 85 Ill. 558.

The opinion of the court was delivered by

JOHNSTON, J.: This is an appeal in a contempt proceeding, wherein Otto Miller was adjudged guilty of violating an in-

junction order of the district court of Harper county. It appears that the Hutchinson & Southern Railroad Company operates a railroad from Hutchinson to the south line of the state, and that it passes across the farm of W. T. Peck, in Harper county. A controversy arose between the company and Peck in regard to payment for the right-of-way of the railroad over the Peck land. It appears that there had been a compromise of their differences, and after the road had been in operation for a year or two, Peck brought an action to eject the company from its right-of-way over the land, alleging that full payment had not been made for the right-of-way according to the agreement. He also asked that during the pendency of the action the company should be enjoined from using or passing over that part of the track or road which is upon the land in question. On July 26, 1893, upon an application made to the judge at chambers, and without notice to the company, a temporary order was issued enjoining the company, its agents, employés, lessees, and all other persons acting for it, from running trains over the Peck land, or from taking therefrom any railroad property or improvements. An injunction bond was given, and the order became effective on July 28, 1893.

On September 1, 1893, Peck filed an affidavit charging that Otto Miller, as manager of the railroad company, had violated the order of injunction by running the trains of the company over the Peck land on the 9th and 10th days of August, 1893, in contempt of the order of injunction. An attachment for contempt was issued, under which Miller was arrested, and a hearing was had before the district court on October 6, 1893, when he was found guilty of contempt, and adjudged to pay a fine of $25. It was then made to appear that Otto Miller had been appointed receiver of all the property of the railroad company by the circuit court of the United States for the district of Kansas, and was in the possession and management of the property at the times that he was charged with operating the road across Peck's land in disregard of the injunction. The action in the federal court

in which the receiver was appointed was begun in 1891, and the appointment of the receiver was made on August 7, 1893. It thus appears that the action in the federal court was begun long prior to the commencement of the injunction suit in the state court, and although the injunction order was issued and served before the receiver was appointed, the road and the entire property of the company had passed into the dominion and custody of the court before the 9th and 10th days of August, 1893, when it is alleged that Miller violated the injunction. At that time the property was in the custody of the law, and the receiver was operating the road as an officer of the court.

Although the injunction order was first in point of time, it did not operate to change the possession of the property, while the appointment of a receiver had the effect to take the possession and control of the same from the railroad company and place the entire management and control in the court making the appointment. (High, Rec., § 39.) The general rule is, that the court which first acquires possession and control of property by the appointment of a receiver will retain such control to the end of the litigation, to the exclusion of interference by other courts of concurrent jurisdiction. Without determining whether Peck was entitled to the remedy of ejectment which he was seeking, or whether an injunction order of another court might not be enforced against a receiver in some cases, we are clear that the order should not be enforced in this instance. We must assume that the receiver was duly appointed, and that the federal court lawfully acquired the custody and control of the railroad property.

Injunction— enforcement against receiver—operation of railroad.

It is important to all concerned that the property should be preserved intact, and the public are especially interested in its continuous operation. The enforcement of the order would operate to cut out a section in the middle of the line, break connection, and make the continuous operation of the road an impossibility. It would, in effect, wrest the possession of a part of the property from the court which had first

gained lawful custody of the same, and tend to destroy, rather than to preserve, the property. Under the principles of comity which prevail between courts, and the rules of equity, this should not be permitted. Peck, or any other party, having a claim against the company, is entitled to apply to the court having the custody of the property for adjustment and payment of such claim. The ruling of the court in enforcing the injunction cannot be sustained, and therefore its judgment will be reversed.

HORTON, C. J., concurring.

ALLEN, J.: The action pending in the federal court related to the entire property of the railroad company; that in the state court, only to a portion of that property. The parties to the cases were not identical. At the time the injunction was granted by the district court, the federal court had not taken the property of the railroad company into its custody. The order of the district court, at the time it was made, was not necessarily an interference with the jurisdiction of the United States court. If the property which the railroad company was enjoined from using had been detached, or at the end of its line, or so situated that an interruption of its use by the railroad company would not seriously interfere with the use and enjoyment of the balance of the property, the case would be similar to that of *Safford v. The People*, 85 Ill. 558, and the district court might properly enforce its order against a receiver subsequently appointed. In this case, however, the enforcement of the injunction would seriously interfere with the management and operation of the entire property of the company. Conflicts in the jurisdiction of different courts must of necessity be settled on broad and liberal principles of comity. It would be exceedingly narrow for a state court to insist, in effect, on controlling the operations of an entire line of road, merely to enforce the rights of a plaintiff who claimed to own a small portion of the land on which the road bed was constructed. The court failed to recognize the principles which should have governed its action in adjudging the appellant guilty of contempt.