## *In re* ELVA PETITT, *Petitioner*.
### No. 17,360.
### ELVA PETTIT (formerly ELVA LEWIS), *Appellant*, v. JOHN A. LEWIS, *Appellee*.
### No. 17,422.

#### SYLLABUS BY THE COURT.

1. SUPREME COURT—*Original Jurisdiction—Supervisory Control Over Inferior Courts.* The grant of original jurisdiction to the supreme court in quo warranto, mandamus and habeas corpus comprehends and carries with it authority to exercise superintending control over inferior courts to the extent that it may be exerted by those writs and proceedings.

2. DISTRICT COURT — *Appellate Jurisdiction — Supervisory Control Over Inferior Courts.* In addition to its appellate jurisdiction the district court is vested with authority to supervise and control inferior courts and tribunals in order to prevent and correct errors and abuses.

3. HABEAS CORPUS—*Appeal from Probate Court to District Court.* An appeal may be taken to the district court from a decision of the probate court in a habeas corpus proceeding.

4. JUDGMENTS—*Custody of Children—Modification of Decree—Notice—Interference by Habeas Corpus.* A district court which renders a judgment divorcing parties and providing for the custody, education and maintenance of minor children holds a continuing jurisdiction in respect to the children, and may at any time, upon proper application and notice, modify its decree whenever the altered conditions or circumstances of the case or the parties require it, and when due notice of an application to modify the judgment has been made the probate court can not, by a writ of habeas corpus or otherwise,

deprive the district court of power to modify the judgment nor interfere with its authority to change the custody and control of the children.

Case No. 17,360 is an original proceeding in habeas corpus. Opinion filed April 8, 1911. Prayer of the petitioner denied.

Case No. 17,422 is an appeal from Harper district court. Opinion filed April 8, 1911. Affirmed.

*E. C. Wilcox,* for the petitioner and appellant.

*George E. McMahon,* for the respondent and the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: These proceedings involve the custody of Nadene Lewis, the infant daughter of Elva and John A. Lewis. On April 26, 1909, Elva Lewis obtained a decree of divorce from John A. Lewis, and she was given the custody of Nadene, who was then about four years of age, and of another child, who has since died. Shortly after the divorce she removed to Oklahoma City, where she conducted a rooming house. On July 20, 1910, she signed a paper in which it was stated that she relinquished the custody and control of Nadene and stipulated that thereafter John A. Lewis, her former husband, should have the custody, care and control of the child. He brought Nadene to Harper county, Kansas, and placed her in the home of his father and mother, with whom he lived. The day following the surrender of Nadene, Elva Lewis married Charles Petitt, a quarter-blood Indian of the Cherokee tribe. No question was raised as to the right of John A. Lewis to the custody of Nadene until he served a notice on Elva Petitt that he would ask the district court of Harper county to modify its decree in the divorce proceedings so as to give the custody and control of the child to him. The notice was served on October 14, 1910, and in it the time fixed for a hearing

*In re* Petitt.

was November 11, 1910. On October 22, 1910, and upon the application of Elva Petitt, the probate court of Harper county issued a writ of habeas corpus, the purpose of which was to take Nadene from her father and place her again in the custody of Elva Petitt. At the end of a hearing, begun on October 31, 1910, in which the probate court was informed of the notice and the proceedings in the district court, the probate court made an order awarding the custody of the child to Elva Petitt. Prior to that time, and on October 27, 1910, the district court, on the application of John A. Lewis, had issued an order directing the sheriff, who had the custody of Nadene, not to surrender that custody nor allow her to be taken out of the jurisdiction of the court, but to hold and bring her before the court on November 11, 1910, when the hearing for the modification of the decree was to be had. The sheriff then declined to surrender the custody of the child in obedience to the order of the probate court, and, on the application of Elva Petitt alleging that the sheriff was illegally restraining the child, a writ of habeas corpus was issued by this court on November 3, 1910.

Afterward, and on November 11, 1910, a trial was had in the district court, in pursuance of the notice given October 14, 1910, wherein considerable testimony was given concerning the habits, character and circumstances of the mother and father of Nadene. The district court modified the decree previously rendered and adjudged that the care and custody of Nadene should be given to the father, John A. Lewis, but it was provided in the modified decree that it was not intended to, and should not, conflict with any orders the supreme court might make in the proceedings pending here. An appeal was taken from the decision of the district court, and that appeal and the original proceeding in habeas corpus were submitted together.

The appellant contends that the district court was without jurisdiction to change the custody of the child,

and this upon the ground that when the probate court issued the writ of habeas corpus it acquired jurisdiction of the child and the exclusive authority to determine with whom the custody should be in the future. It is argued that in habeas corpus the probate court is of equal rank with the supreme and the district courts, and that its orders respecting the custody of the child are just as effectual and binding as those made by the higher courts. While it is vested with jurisdiction in habeas corpus, it is inferior to the supreme and the district courts and is subject to the supervisory power of both. The supreme court stands at the head of our judicial system, with the highest appellate jurisdiction, and, besides, it is vested with original jurisdiction in quo warranto, mandamus and habeas corpus. While the constitution does not in specific terms provide that the supreme court shall have supervisory power over inferior courts, it undoubtedly has such superintending control as may be, and generally is, exercised through the original writs which the constitution authorizes it to issue. The action of inferior courts has frequently been supervised and controlled by the supreme court through these prerogative writs. (*Munkers v. Watson, Judge, &c.,* 9 Kan. 688; *Duffitt & Ramsey v. Crozier, Judge,* 30 Kan. 150; *The State, ex rel., v. Webb, Judge,* 34 Kan. 710; *Bird v. Gilbert,* 40 Kan. 469; *City of Emporia v. Randolph,* 56 Kan. 117; *Grimes v. Barratt,* 60 Kan. 259; *Bleakley v. Smart,* 74 Kan. 476.) The subject of the superintending control and supervisory jurisdiction of superior over inferior courts is elaborately treated in a note appended to *State ex rel. Fourth National Bank v. Johnson,* 51 L. R. A. 33. In summing up the result of the authorities it is said:

"The constitutional or statutory grant of power to issue the writs by means of which the power of superintending control is exercised comprehends and carries with it the authority to exercise the power of superintending control to the extent that it can be exerted by those writs." (p. 111.)

The district court is superior to the probate court, not only because of the appellate power conferred, the prerogative writs which it may issue, and the higher character of its jurisdiction, but the statute expressly provides that it shall have general supervision and control of inferior courts and tribunals to prevent and correct errors and abuses. (Gen. Stat. 1868, ch. 28, § 1, Gen. Stat. 1909, § 2390.) The probate court is a court of record and is vested with jurisdiction in cases of habeas corpus, and as to proceedings clearly within its jurisdiction it is not to be considered as an inferior court; but, even as to habeas corpus, its orders and judgments may be corrected and revised upon appeal. (Gen. Stat. 1868, ch. 28, § 1, Gen. Stat. 1909, § 2390.) In *Grimes v. Barratt,* 60 Kan. 259, it was held that under section 583 of the old code error from the judgment of the probate court would lie, and the new code in terms provides that a judgment or final order of the probate court may be reversed, vacated or modified by the district court. (Code 1909, § 564.) The new code abolished proceedings in error and provided that such judgments and orders shall be reviewed on appeal. This broadened the power theretofore granted, so that now there may be a review and retrial of the questions of fact as well as of law involved in appeals from probate courts, and section 571 of the code of 1909 points out the method by which an appeal may be taken. It is suggested that a provision of the act relating to executors and administrators prohibits an appeal in cases of habeas corpus. That act enumerates twelve kinds of decisions from which an appeal will be allowed, and this is followed by a clause providing that there shall be an appeal "in all other cases where there shall be a final decision of any matter arising under the jurisdiction of the probate court, except in cases of habeas corpus and injunction." (Gen. Stat. 1868, ch. 37, § 188, Gen. Stat. 1909, § 3624.) This act, however, only relates to the sub-

41—84 KAN.

ject of the settlement of the estates of deceased persons
and the powers and duties of executors and adminis-
trators in the premises.   The matter of habeas corpus
is not within either the title or the subject of the act,
and the clause referring to it is therefore ineffectual.
Aside from that, the provision of the new code relating
to an appeal from the probate court is later legislation,
and even if the provision in the executors and admin-
istrators act could be regarded as valid it would be
superseded by the later provision on the subject in the
code.

So we have the supreme court, with appellate juris-
diction coëxtensive with the state, to review the judg-
ments of the district courts, and superintending con-
trol of all inferior courts so far as it may be exercised
through the prerogative writs which it is empowered
by the constitution to issue.   Then we have the district
courts, with appellate jurisdiction over the probate
courts, justices of the peace and other inferior tri-
bunals, and superintending control over all inferior
tribunals.   The system is simple and complete, and as
to the cases of habeas corpus, over which all three of
the courts of record have jurisdiction, there is an ap-
peal from the probate court to the district court and
then from the district court to the supreme court.   It is
unnecessary, in this case, to determine to what extent
the supervisory powers of the superior courts may be
exercised in habeas corpus cases.   The district court
had acquired jurisdiction of the subject of inquiry—
the custody of the child—before the proceedings were
begun in the probate court.   The district court could
not, therefore, be deprived of its authority to determine
the question by the subsequent intervention or action
of the probate court.   It was the district court of Har-
per county that rendered the judgment divorcing the
parties and providing for the custody and maintenance
of the minor child.   The judgment was within the con-

*In re* Petitt.

trol of that court, and was subject to modification by it. The code provides:

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper." (Code 1909, § 672.)

It has already been held that "this section leaves the matter entirely in the hands of the court. It may at any time, upon proper notice, change any former order made with reference to these matters by adding to, or taking from, the burdens of either party relative to the same. . . . Such orders may be made by the court upon its own motion, or upon the suggestion of anyone immediately or remotely interested." (*Miles v. Miles,* 65 Kan. 676, 678, 679.)

The proceeding to modify the decree in this instance was instituted by the service of a notice upon Elva Petitt, prior to the issuance of the writ of habeas corpus by the probate judge. The notice was served on October 14, 1910, and it recited that an application would be made to the district court to amend the decree relating to the custody of Nadene. The motion for the modification recited that Elva Petitt had been guilty of lewd and lascivious conduct, specifying particular instances, and that by reason of the changed conditions she was an unfit person to have charge of the child. It is peculiarly the province of the district. court which renders the decree to modify that decree respecting the custody of children, and to determine whether the altered conditions warrant a change in the decree with respect to such custody; but, even if the courts should be treated as having concurrent and equal jurisdiction in respect to the subject matter, the district court, having first acquired jurisdiction, would hold it to the exclusion of the other. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 42 Kan. 223; *The State v. Miller,* 54 Kan. 244; *Railway Co. v. Love,* 61 Kan. 433.) The juris-

diction of the district court, regularly acquired by the service of notice, could not be wrested from it by any action of the probate court, and its right to proceed to the end of the inquiry could not be thwarted or impeded by any intermeddling process issued by the probate court.

The action of a probate court in attempting to interfere with the custody of children, as determined by a court of common pleas, was before the supreme court of Ohio, and it was decided that the jurisdiction of the common pleas court was a continuing jurisdiction, and that if any changes were necessary they should be made by that tribunal. It was said:

"The court making the original decree is the proper forum in which to seek a modification of its orders; and it would be vexatious and dangerous to permit probate courts, either by habeas corpus or letters of guardianship, to interfere with them, directly or indirectly, except, it may be, to enforce them. And cases of this kind, too, often present questions of a difficult, delicate and important character, and a wise public policy would seem to require that they be dealt with by courts which, from their dignity, and the nature of their constitution and jurisdiction, afford the best presumption of ability properly to dispose of them." (*Hoffman v. Hoffman*, 15 Ohio St. 427, 436.)

(See, also, *Neil v. Neil*, 38 Ohio St. 558; *Rogers v. Rogers*, 51 Ohio St. 1.)

The supreme court of Illinois has held that the children of divorced parties are, in a sense, the wards of the court which entered the decree fixing the relations of the divorced parties and the custody of their children, and that under the chancery jurisdiction it may, at any time after the decree, make any other or further orders as to the custody of the children that the circumstances may require. (*Cowles v. Cowles*, 8 Ill. 435; *Miner v. Miner*, 11 Ill. 43; *Hewitt v. Long*, 76 Ill. 399; *Cole v. Cole*, 142 Ill. 19; *Chase v. Chase*, 70 Ill. App. 572; *Smith v. Smith*, 101 Ill. App. 187.)

In Indiana, where there is no special provision for

action of the court after the decree is rendered, it has been held:

"Where upon granting a divorce the court in its judgment assigns the custody of the children to one of the parties, such disposition of the children will control till the judgment making it is modified by the court upon proper application and can not be disregarded in a subsequent proceeding by habeas corpus to obtain possession of the children." (*Williams v. Williams*, 13 Ind. 523, syl.)

The question remains whether the testimony warranted the district court in modifying the decree and awarding the custody of the child to John A. Lewis. Mrs. Petitt insists that the agreement to surrender the child to Lewis was obtained by reason of threats that she would be arrested and placed in jail on a charge of lascivious and indecent conduct if she did not sign it. She did surrender the child to Lewis on July 20, 1910, and he took Nadene to the home of her grandfather in Harper county, Kansas. No complaint of this action was made, nor was there any attempt to recover the custody of the child until a notice of an application to modify the decree was served, on October 14, 1910. On the question of whether she was a fit person to have the care and custody of the child much testimony was received. It related to her associations, conduct and manner of life in Oklahoma, and, taking it as presented here, we can not say that the district court acted unwisely or that its order transferring the custody of the child is without support. It is needless to state in detail the charges of misconduct or the testimony offered to sustain them, but, on the whole, it would appear that the welfare of the child, which is the paramount consideration, will be best subserved by giving her custody and control to the father.

The ruling denying a continuance of the case in the district court is not deemed to be a material error.

It follows that the prayer of the petitioner in the habeas corpus proceeding must be denied and the judgment of the district court affirmed.