No. 19,524.

## *In re* CARL A. BEEBE, Petitioner.

SYLLABUS BY THE COURT.

1. MURDER—*Acquitted on Ground of Insanity—Commitment to Asylum for the Dangerous Insane.* Under chapter 299 of the Laws of 1911, one who is acquitted of murder on the ground that he was insane when he killed the deceased is deemed unsafe to be at large until shown to have been restored to sanity or to be no longer dangerous, and upon such acquittal it becomes the duty of the court to commit the defendant to the asylum for the dangerous insane.

2. SAME. The refusal of the trial court to grant a hearing as to the present sanity of the defendant before such commitment is carried into effect by placing him in such asylum does not avoid the commitment or render restraint thereunder illegal.

Original proceeding in habeas corpus. Opinion filed July 7, 1914. Writ denied.

*Arthur J. Stanley,* and *Guy E. Stanley,* both of Kansas City, for the petitioner.

*John S. Dawson,* attorney-general, *S. M. Brewster,* assistant attorney-general, and *James M. Meek,* of Kansas City, for the respondent.

The opinion of the court was delivered by

WEST, J.: The petitioner alleges that he is illegally restrained of his liberty by the superintendent of the state asylum for the dangerous insane; that on May 16 he was acquitted in the district court of Wyandotte county on the charge of murder in the first degree, the verdict being, "We the jury find the defendant not guilty on the ground that he was insane at the time he shot deceased, Edith Beebe;" that after the return of the verdict the petitioner filed a written application in the district court for an inquiry as to his mental condition, which was refused.

The contention is made that the finding of insanity at the time of the shooting does not justify the court and the superintendent in restraining him of his liberty, which could only be done rightfully upon adjudication of his mental condition at the time of the trial. It was stated in the argument that the insanity at the time of the shooting was temporary in its nature, but it was not so designated in the verdict, which we must consider as an ordinary finding of insanity. In the Clark case (*In re Clark*, 86 Kan. 539, 121 Pac. 492) the statute (Laws 1911, ch. 299) under which the commitment was made was held valid as against the attacks therein made upon its constitutionality. Section 4 provides that whenever any person under indictment or information, and before or during the trial and before the verdict is rendered, shall be found by the court or by the commission, or another jury impaneled for the purpose of trying such person, to be insane, an idiot or an imbecile, and unable to comprehend his position or make his defense, he shall forthwith be committed to the asylum in question for safe treatment until he shall recover. Section 5 provides that whenever during the trial of any person evidence is introduced to prove that he was insane when the offense was committed, and he shall be found to have been insane at the date of the alleged offense, and is acquitted on that ground, "the jury or the court, as the case may be, shall so state in the verdict and in said case it shall be the duty of the jury to pass specially on the question of the sanity of the defendant, and the court shall thereupon, forthwith commit such person to the State Asylum for the Dangerous Insane for safe-keeping and treatment, and such person shall be received and cared for at said institution. No such person so acquitted shall be liberated therefrom, except upon the order of the court committing him thereto and until the superintendent . . . shall certify in writing to such committing court that in his opinion such person is wholly recovered and that

no person will be in danger by his discharge." In *In re Brown,* 39 Wash. 160, 81 Pac. 552, 109 Am. St. Rep. 868, 1 L. R. A., n. s., 540, a statute was held valid which provided that upon a return of a verdict like the one involved herein, "if the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the community, the court may order him to be committed to prison." (p. 163.) From a footnote it appears that in a number of the states the power to commit, based upon a mere finding of insanity at the time the offense was committed, is deemed to be in contravention of the constitutional safeguards, the theory being that neither the court nor the legislature can rightfully commit for insanity one who is actually sane, but who at some former time has been insane. This act provides for an asylum for "mentally infirm and dangerous" persons. Authority is given to transfer insane prisoners from the penitentiary and reformatory, and to place in this institution inmates of the other state hospitals who have homicidal tendencies or whose presence is dangerous to the other inmates. Coming to criminal cases, it is plain that section 4 has direct reference to insanity at the time of the trial, and none whatever to insanity at the time the offense was committed, while section 5 provides that after an acquittal on the ground that the defendant at the time the homicide was committed was insane, idiotic or imbecile, the court "shall thereupon, forthwith" commit such person. It is argued that the requirement that "in said case it shall be the duty of the jury to pass specially on the question of the sanity of the defendant" means a finding as to his present sanity. The difficulty with this construction is that the next clause would make it the imperative duty of the court to commit such person regardless of the way in which the jury might have passed on the question of his present sanity, which is utterly inconsistent with the notion that the commit-

ment is to be contingent on the result of such action. There was evidently an attempt to follow somewhat the wording of the Minnesota statute (Revised Laws of Minn. 1909, § 5376), providing that after acquittal on the ground of insanity when the offense was committed the court shall forthwith commit to the "proper state hospital or asylum," and whenever in the opinion of such jury or court such person at the time of the killing had homicidal tendencies, this also shall be stated in the verdict or upon the minutes, whereupon the court must commit to the "hospital for the dangerous insane for safe-keeping and treatment." But in section 5 of our statute there is but one commitment contemplated, and that to the asylum for the dangerous insane. It is apparent that the legislative thought and intent were that one recently so insane as to kill another should be deemed unsafe to be at large and a proper subject for care and treatment in the asylum in question until shown to have been restored to sanity or to be no longer dangerous. Thus construed, the statute, as said in the Clark case, "gives protection to the public against . . . irresponsible frenzy or distraction, and affords to the unfortunate persons so committed safe seclusion and humane treatment, which it is the province of the state to give in the exercise of its parental power." (86 Kan. 553.) No means are provided for any evidence or hearing as to present sanity, and surely if such a hearing were intended it could not be the purpose to commit the defendant if found to be sane. Besides, there is an express prohibition upon liberation from the asylum until a certain showing has been made to the court that he has recovered or that no person will be in danger by his discharge.

The fact that the trial court denied an application for an inquiry into the petitioner's sanity does not avoid the commitment or render his restraint illegal for want of power.

As pointed out in the opinion quoted from (86 Kan. 539, 548) an application for liberation can be made by him, or on his behalf, in a simple, ordinary way; but the one here made was not for liberation from the asylum, but rather to prevent his being placed therein—a thing which the statute does not mention, and certainly one whose refusal does not work the right to a discharge.

The writ is therefore denied.