No. 19,936.

T. W. CAMPBELL, *Plaintiff*, v. GEORGE J. DOWNER, as District Judge, etc., *Defendant*.

SYLLABUS BY THE COURT.

DANGEROUS INSANE—*Trial for Murder—Acquitted on Ground of Insanity—Committed to Hospital for Dangerous Insane—Proceedings Not Reviewable by Motion for New Trial, nor by Appeal.* Proceedings in a trial upon an indictment or information charging a crime, resulting in a verdict of acquittal which finds that the defendant was insane when the offense was committed, in accordance with section 5 of chapter 299 of the Laws of 1911, are not subject to review by motion for a new trial or by appeal.

Original proceeding in mandamus. Opinion filed March 6, 1915. Writ denied.

*F. A. McCoy*, of Hugoton, *L. A. Madison*, and *Carl Van Riper*, both of Dodge City, for the plaintiff.

*S. M. Brewster*, attorney-general, *John L. Hunt*, assistant attorney-general, *W. E. Eddy*, of Hugoton, and *Edgar Foster*, of Garden City, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus to require the judge of the district court of Stevens county to consider and rule upon a motion for a new trial.

An information was filed against the plaintiff charging him with the murder of C. E. Hall. The defenses were that the plaintiff did not do the shooting charged in the information, that Hall did not die from wounds inflicted by the plaintiff but from other causes, that the killing was justifiable, that it was excusable, and that the plaintiff was insane at the time the homicide was committed. The court gave among others the following instruction:

"If the defendant, T. W. Campbell, shot and killed the said C. E. Hall at the time and place and with a shot-

gun, as charged in the information, and if at the time he did so he was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing, or, if he did know it, that he did not know that what he was doing was wrong, then the law does not hold him responsible for his act. On the other hand, if he was capable of understanding what he was doing, and had the power to know that his act was wrong, then the law will hold him criminally responsible for it. . . . It devolves upon the state to prove to your satisfaction, beyond a reasonable doubt, the defendant's sanity, as above defined, at the time of the shooting. If you believe from all the evidence in the case, beyond a reasonable doubt, that the defendant at the time and place, and in the manner charged in the information, shot and killed C. E. Hall, and if you should fail to find from all the evidence in the case, beyond a reasonable doubt, that the defendant at the time of such shooting and killing was insane, as above defined, then you must acquit the defendant."

The jury returned the following verdict:

"We, the jury empanneled and sworn in the above-entitled case, do upon our oaths find the defendant not guilty, and we further find that the defendant was insane at the time the offense was committed."

Thereupon the court committed the plaintiff to the hospital for the dangerous insane. On the next day the plaintiff filed a motion for a new trial on the grounds common in criminal cases, and a motion to discharge the plaintiff from custody. The motion to discharge was overruled, but the court declined to consider the motion for a new trial, and the commitment was duly executed:

The statute governing the controversy reads as follows:

"Whenever during the trial of any person on an indictment or information evidence is introduced to prove that he was insane, an idiot or imbecile or of unsound mind at the time of the commission of the offense, and such person shall be found to have been at the date of the offense alleged in said indictment or information

insane, an idiot, or an imbecile, and is acquitted on that ground, the jury or the court, as the case may be, shall so state in the verdict, and in said case it shall be the duty of the jury to pass specially on the question of the sanity of the defendant, and the court shall thereupon forthwith commit such person to the state asylum for the dangerous insane for safe keeping and treatment, and such person shall be received and cared for at said institution. No such person so acquitted shall be liberated therefrom, except upon the order of the court committing him thereto and until the superintendent of the said asylum for the dangerous insane shall certify in writing to such committing court that in his opinion such person is wholly recovered and that no person will be in danger by his discharge." (Laws 1911, ch. 299, § 5.)

The verdict conforms to the statute. Evidence was introduced at the trial to prove the defendant was insane at the time the offense charged in the information was alleged to have been committed. The jury passed specially upon the question of the plaintiff's sanity. He was found to have been insane on the date of the alleged offense, the jury so stated in its verdict, and the plaintiff was acquitted of crime on that ground. Under these circumstances it is clear that the law governing procedure in criminal cases ceased to have any application the moment the verdict was returned. The plaintiff has been acquitted of crime. A motion for a new trial on the information charging a crime has no office to perform and no possible ground for an appeal exists. The criminal case has terminated in the plaintiff's favor as certainly and as absolutely as if the special finding of insanity were absent from the verdict.

From the time evidence of insanity was introduced the prosecution bore a double aspect—a trial for crime and an inquest relating to sanity. The verdict having eliminated responsibility for crime and having so ended the criminal proceeding, the statute steps in, adopts the verdict the same as if it were the result of an in-

quest, and directs what shall be done. The procedure is special for the case to which it applies, and the district court has no authority beyond that conferred by the statute. No provision is made for setting aside the verdict and for granting a new trial, and no appeal is provided for. On the other hand, such proceedings are clearly forbidden by the peremptory requirement that when the verdict is returned the court shall thereupon forthwith commit the person tried to the hospital for the dangerous insane, and by the special and exclusive provision relating to liberation. The procedure prescribed by the General Statutes governing insanity proceedings (Gen. Stat. 1909, §§ 4819-4854) is ignored and a method of handling the dangerous insane is provided which is *sui generis*. New trial and appeal are matters of legislative discretion and favor. They may be granted or withheld, as the legislature sees fit. Having been withheld in the case of any person found to be insane when tried upon an indictment or information charging crime, and acquitted on that ground, they do not exist.

It will be observed that the statute quoted does not apply to a defendant under indictment or charged by information who at or before the time of trial is discovered to be unable to comprehend his situation and make a defense because of insanity. Other provision is made for the conduct of such cases. The statute is designed to meet the defense of insanity successfully interposed in the course of a prosecution for crime. This defense is in essence and effect one in the nature of confession and avoidance. In civil cases a defendant is required to be consistent. He can not, as the expression is, "blow hot and cold." When the general welfare is concerned he may do this. When on trial for a breach of social duty he may deny generally, excuse, justify, tacitly admit, and still deny. His plea of not guilty puts all the allegations of the indictment or information in issue to the end of the trial, but he may say,

"although I did the killing, I was mentally irresponsible." The statute still contemplates the establishing of the act on which the charge of crime is based, as in this case, a killing. The instructions quoted above were properly framed on this theory. But the statute deals with the result of a successful interposition of the defense of insanity in its own way. It disturbs the former practice in such cases, cuts across many current legal and medico-legal conceptions, and ignores to a considerable extent current legal terminology. But no confusion will result if the statute be applied by the courts in the field and in the manner indicated by its simple terms.

It is not necessary to notice specially the arguments advanced by the plaintiff. Practically all of them lead to the application of the provisions of the code of criminal procedure relating to new trial and appeal. It is utterly immaterial what errors were committed by the court in the investigation of the subject of liability for crime, because the plaintiff has been acquitted. If the verdict in this class of cases were "guilty but insane" the right to resort to the usual procedure for a review of the proceedings establishing guilt might be considered. But there is no method known to the law for retrying a defendant on a charge of crime of which he has been acquitted by the verdict of a jury. The legislature did not care to place the state in the situation of being unable to retry a defendant on the charge contained in the indictment or information while leaving it open to the defendant to obtain a new trial on the question of his sanity. Consequently the special verdict establishing insanity, upon which the acquittal of crime rests, is accepted as well founded and is executed without further examination.

The writ is denied.