No. 21,346.

## *In re* ABE OSTATTER, *Petitioner.*

### SYLLABUS BY THE COURT.

1. HABEAS CORPUS—*Petitioner Committed to Asylum for Dangerous Insane—Never Legally Liberated—Writ Denied.* One who is acquitted upon a charge of murder upon the ground that he was insane at the time of the commission of the offense, and who was then committed to the state asylum for the dangerous insane, can only be liberated in the way provided by law, that is, by a finding and order of the proper state authorities that he is wholly recovered and that no one will be in danger by reason of his discharge.

2. SAME.  Under the testimony, the petitioner has not been restored to sanity, nor has he complied with the provisions of the law for the liberation of persons committed to the asylum for the dangerous insane.

Original proceeding in habeas corpus.  Opinion filed October 21, 1918.  Writ denied.

*Henry E. Dean,* of Kansas City, for the petitioner.

*S. M. Brewster,* attorney-general, and *Herbert E. Ramsey,* county attorney, for the respondent; *James P. Coleman,* of Topeka, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: The petitioner, Abe Ostatter, is seeking a release from the asylum for the dangerous insane at Lansing, Kan.

In March, 1914, a prosecution was commenced upon an information charging him with murdering Anna Cohen.  At that time a commission appointed by the court found him to be insane and incapable of conducting his defense, and he was thereupon committed to the asylum for the dangerous insane, there to be cared for until he should recover, when he should be returned to the court for trial on the information.  In December, 1914, the medical superintendent of the asylum certified that

he had treated the petitioner since his commitment and had observed his condition; that he had greatly improved; that in his opinion he had wholly recovered his sanity; and that no person would be in danger by his liberation and discharge from the asylum. He was returned to Reno county and tried on the murder charge, and on January 7, 1915, the jury returned a verdict acquitting him on the ground that he was insane when he shot and killed Anna Cohen, and special findings were returned in support of this verdict. On January 11, 1915, the court again ordered his commitment to the asylum, there to remain until the superintendent of the institution "shall certify in writing to this court that in his opinion said defendant has wholly recovered and that no person will be in danger by his discharge, and until an order shall be made by this court ordering that said defendant shall be liberated from said State Asylum for the Dangerous Insane." On September 5, 1916, application was made to that court for his release, and it was denied. Thereafter, petitioner made application to the probate court of Leavenworth county, which ordered his release from the custody of the respondent, but the latter appealed to the district court of Leavenworth county where a stay of execution was granted, and when the hearing was had in the district court, petitioner dismissed his proceeding. The petitioner now brings this proceeding, alleging several grounds of illegality in his detention, but the only one relied upon is that he is now sane. The answer of the respondent, among other things, denies that petitioner is now sane, and justifies his detention under the authority of the commitment of January 11, 1915, by the district court of Reno county, which has never since that time directed the release of petitioner.

The petitioner offers some testimony to the effect that he has recovered, is mentally normal, and that the life of no one would be in danger by his release. Evidence was offered that petitioner was afflicted with the Jacksonian form of epilepsy of the *grand mal* type, which is said to be incurable, and that so long as these seizures continue he is unfit to be at large. One witness who testified in behalf of the petitioner stated that he appeared to be normal, but he admitted that he had no knowledge of epilepsy or its effects. A physician who was a specialist in nervous diseases expressed the opinion that the petitioner was

normal mentally, but on cross-examination he stated that one
having epileptic seizures within the last six months ought not
to be released.  Another witness testified that if the petitioner
had an epileptic fit of the type mentioned he was not cured of
epilepsy.  There was considerable testimony to the effect that
the petitioner had had several attacks of epilepsy within six or
seven days before the testimony was given.

In the judgment committing him to the asylum it was
recited that he was to be held in custody until the superin-
tendent of the asylum should certify to the district court that
the petitioner was wholly recovered and that no person
would be in danger by his discharge, and until an order of
that court discharging him had been made.  The judgment
was entered in accordance with the statute then in force,
which provided that a person so committed should not be lib-
erated except upon the order of the court committing him,
and until the superintendent of the asylum should certify in
writing to that court that in his opinion the person committed
was wholly recovered and that no person would be in danger
by his discharge.  (Laws 1911, ch. 299, § 5.)  An act was
passed in 1915 purporting to confer upon the state board of
corrections the power to liberate prisoners acquitted of a
criminal charge on the ground that they were insane when
the crime was committed, and prescribing the procedure to
obtain such liberation.  (Laws 1915, ch. 339.)  The valid-
ity of this act has been challenged, and the district court of
Shawnee county has held it to be void in a judgment rendered
several years ago, which has never been reviewed nor set
aside.  Its validity is not a question in this case, since its pro-
visions are not invoked and the petitioner has not attempted
a compliance with its provisions.  He has not complied with
the terms of the judgment committing him to the asylum, nor
has he taken the steps necessary to a discharge as provided
in the act of 1911, and, as we have seen, he has not even fol-
lowed the procedure of the challenged act of 1915.  The peti-
tioner secured an acquittal of the crime of murder on the
ground that he was insane when the offense was committed.
That verdict established his status, and under the law he is to
be regarded as insane and dangerous until a showing has been
made as the law provides, that he has been restored to his

right mind, and that no one would be in danger by reason of his being at large. The validity of the law providing for the commitment and retention of the dangerous insane has been determined. (*In re Clark,* 86 Kan. 539, 121 Pac. 492.) It has also been decided that one acquitted of murder on the ground that he was insane when he killed the deceased, is deemed to be insane and unsafe to be at large, and that he must remain in custody until it is shown in the way prescribed by statute that he is restored to sanity and is no longer dangerous. (*In re Beebe,* 92 Kan. 1026, 142 Pac. 269.) The matter, as we have seen, was presented to the district court which committed the petitioner to the asylum, and, upon evidence submitted, that court determined that the petitioner was still afflicted with epilepsy and might attack and kill others if he was discharged. There is a suggestion in the application for discharge that that court was prejudiced and acted arbitrarily in refusing a discharge, but we find no justification for the imputation and, besides, the charge appears to have been abandoned, since it is not mentioned in the brief filed in behalf of the petitioner.

Had the duty devolved upon this court to determine whether the petitioner is wholly recovered and restored to his right mind and that no person would be in danger by his discharge, we must have held that the evidence did not establish a recovery nor warrant a discharge. Not having obtained a finding and determination of recovery and restoration as the law prescribes, the writ must be denied.