No. 22,837.

*In re* HARVE B. WADLEIGH, an Insane Person.

SYLLABUS BY THE COURT.

1. INSANE PERSON—*Transferred to State Asylum for Dangerous Insane —Jurisdiction of Probate Court to Hear Application for His Discharge.* Where pursuant to an ordinary proceeding in lunacy a person is committed to a state hospital for the insane, and he is thereafter lawfully transferred to the state asylum for the dangerous insane because of his homicidal tendencies, the probate court in a proper proceeding has jurisdiction to hear and determine an application for his discharge in accordance with the provisions of section 9618 of the General Statutes of 1915; and the restrictions against the liberation of inmates of such asylum without full hearing, finding and order of the state board of corrections, prescribed by section 10044 of the General Statutes of 1915, do not pertain thereto nor interfere therewith.

2. APPEAL—*From Judgment of Probate Court Discharging an Inmate of a State Hospital for the Insane.* A final order and judgment of the probate court discharging an inmate of a state hospital for the insane, including the state asylum for the dangerous insane at Lansing, may be appealed by the state to the district court, under the broad appellate and supervisory powers which the district court possesses over all inferior courts and tribunals exercising judicial functions.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 9, 1921. Reversed.

*Richard J. Hopkins,* attorney-general, and *Robert C. Postlethwaite,* county attorney, for the appellants.

*Floyd E. Harper,* of Leavenworth, for the appellee.

*In re* Wadleigh.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal by the state from an order of the district court dismissing the state's appeal to that court from a judgment of the probate court discharging one Harve Wadleigh from the custody of the authorities in charge of the state asylum for the dangerous insane at Lansing.

The state contends that the probate court had no jurisdiction to hear and determine the petitioner's cause; and it contends, also, that an appeal may be taken to the district court from the judgment of the probate court. Counsel for the appellee disputes both of these contentions.

Touching the first proposition the state seems to be in error. The probate court does not have jurisdiction to consider an application to discharge a lunatic whose lunacy has been adjudged as a pertinent incident to a criminal prosecution and who is incarcerated in the state asylum for the dangerous insane by virtue of such judgment. The statute reads:

"Whenever during the trial of any person on an indictment or information, evidence is introduced to prove that he or she was insane, an idiot, an imbecile, or person of unsound mind, at the time of the commission of the offense, and such person shall be found to have been at the time of the commission of the offense alleged in such indictment or information, insane, an idiot, an imbecile, or person of unsound mind, and he or she shall be acquitted on that ground, the jury shall so state in the verdict, and the court shall, thereupon forthwith commit such person to the state asylum for the dangerous insane for safe keeping and treatment, and such person shall be received and cared for at said institution. No such person shall be liberated from such institution except in pursuance to an order made by the state board of corrections after a full hearing and a finding and determination by said board that such person is wholly recovered and restored to his or her right mind and that no person will be endangered by his or her discharge, and upon such finding and determination such person shall be entitled to immediate discharge." (Gen. Stat. 1915, § 10044.)

But the petitioner was not committed to the state asylum for the dangerous insane under the section of statute just quoted. If he had been so committed, then he could only be discharged, as the state contends, by order of the state board of corrections (or its legal successor) after full hearing and determination of the propriety of his release.

This man was committed to the state hospital for the insane, at Topeka, in an ordinary proceeding in lunacy by the probate

court of Shawnee county. True, he had slain two persons in Jewell county some time prior thereto, and had been acquitted of the crime of homicide because of his lunacy; but the act providing for committing such lunatics, so acquitted, to the state asylum at Lansing was not then enacted, and no attempt to follow its provisions was or could be undertaken in his case.

Wadleigh was transferred from the state hospital at Topeka to the asylum for the dangerous insane at Lansing, just as any other ordinary lunatic having dangerous tendencies may be transferred under another section of the same statute—

"Whenever any inmate of a state hospital or asylum for the insane or epileptic, or the home for feeble-minded, is found by the state board of control to have homicidal tendencies, or to be under sentence or indictment or information, or whose presence is dangerous to the other inmates of said institution, he shall upon the order of the state board of control be transferred to said state asylum for the dangerous insane for safe keeping and treatment. The original lunacy warrant to the superintendent of said institution, or in case of no lunacy warrant then the application for admission, and also all other papers pertaining to the case shall be transferred with him to said state asylum for the dangerous insane." (Gen. Stat. 1915, § 10042.)

The order of the state board of control, dated May 10, 1911, transferring the petitioner to the Lansing asylum recited that it was being done pursuant to "section 3 of Senate bill, No. 205 of the legislature of 1911," which is the section just quoted.

None of the cases cited by the state is controlling here. In the case of *In re Clark,* 86 Kan. 539, 121 Pac. 492, the petitioner was committed to the asylum for the dangerous insane by order of the district court, pursuant to his acquittal for murder, as a pertinent incident thereto and in conformity with section 10044 of the General Statutes of 1915. That, too, was the situation in the cases of *In re Beebe,* 92 Kan. 1026, 142 Pac. 269; *Campbell v. Downer,* 94 Kan. 674, 146 Pac. 1039, and it was not materially different in the case of *In re Ostatter, Petitioner,* 103 Kan. 487, 175 Pac. 377. The order of commitment to the Lansing institution was made in each of these cases by the district court, and it is in such cases, and those alone, that persons so confined may not be released except on hearing and order of the board of control.

As to all other lunatics, although transferred to the Lansing institution by order of the board of control, the procedure to secure discharge after full recovery, if such discharge is im-

properly withheld by the state's hospital authorities, is outlined as follows:

"On a statement in writing, verified by affidavit, addressed to the judge of the probate court of the county in which a state hospital is situated, or from the county from which any person confined in said hospital was committed, alleging that said person is not insane, or has been restored to his right mind, and is unjustly deprived of his liberty, and said court shall cause the facts to be inquired into, either by a jury or without a jury, as may seem proper to said court, and shall require in conducting said inquiry a written statement of the case made and signed by the superintendent of the asylum. If, on such inquiry, the court shall find the person not insane, it shall order his discharge; if the contrary, he shall so state, and authorize his continued detention. The finding and order of the court, with other papers, shall be duly filed and recorded by said probate judge, who shall forthwith notify the superintendent of the asylum of said findings and order. The cost of such inquiry shall be paid out of the funds of the asylum in which such person is a patient, in the same manner as other accounts are paid. *Providing,* The applicant of such inquiry or persons making said statement shall pay the same if the judge shall find that said application or statement was made without reasonable grounds and shall so order. The inquiry so provided for shall not be held oftener than once in six months in regard to the same person, nor shall it be ordered in the case of any patient within six months of the time of his admission." (Gen. Stat. 1915, § 9618.)

It must therefore be held that the probate court had jurisdiction of the cause presented for the discharge of the petitioner.

But what about the question of appeal? Surely the state was not bound to acquiesce in the decision of the probate court. Has it not the right to have the case reviewed by the district court? If this were an ordinary habeas corpus case, there would be no doubt about it., (*In re Petitt,* 84 Kan. 637, 114 Pac. 1071; *Miller v. Gordon,* 93 Kan. 382, 144 Pac. 274.) The settled policy of this state favors the right of appeal. (*Shannon v. Abrams,* 98 Kan. 26, 31, 157 Pac. 449.) The appellate jurisdiction of the district court over inferior tribunals is fully as comprehensive as the appellate jurisdiction of the supreme court, as will be noted by a comparison of section 564 of the civil code with the two succeeding sections. See an instructive discussion of this general subject in *In re Petitt,* supra, pages 641, 642.

While the instant case is not altogether similar to a proceeding in habeas corpus, and the procedural inquiry may not be determined in the probate court precisely as in habeas corpus,

yet there is a substantial analogy thereto. There was a judgment, a final order, entered by the probate court; and the code says that such judgment, such order, may be reversed, vacated or modified by the district court. The code provides:

"A judgment rendered or final order made by a probate court, a justice of the peace or any other tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court." (Civ. Code, § 564.)

It has been held that a decision of the probate court adjudging that a person is of feeble mind is appealable (Gen. Stat. 1915, § 6131; *Ald v. Appling,* 89 Kan. 340, 151 Pac. 569) ; and while a private complainant in such a proceeding has no right of appeal from an adverse decision—because he has no justiciable interest therein (*In re Erickson,* 104 Kan. 521, 180 Pac. 263)—yet the state by its proper officials has such interest; it has its governmental interest, its paramount responsibility as *parens patriæ* for the petitioner himself and also for the public welfare and security which may be menaced if the judgment of the probate court releasing this petitioner is inconsiderate, improvident, ill-founded, or otherwise erroneous. It follows that the state's second contention is correct.

The judgment is reversed, and the cause is remanded to the district court with instructions to set aside its order dismissing the state's appeal, and for further proceedings consistent herewith.