No. 31,381.

In re Application of FRANK HODISON for Writ of Habeas Corpus; FRANK HODISON, *Petitioner*, v. DEAN ROGERS, Sheriff of Shawnee County, *Respondent*.

(22 P. 2d 491.)

Opinion filed June 10, 1933.

*A. D. Weiskirch,* of Topeka, for the petitioner.

*Lester M. Goodell, Paul G. Harvey* and *Hall Smith,* all of Topeka, for the respondent.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding for a writ of habeas corpus, and to obtain petitioner's release from the sheriff of Shawnee county, who holds him following a trial and conviction of a felony.

The offenses of which petitioner was convicted were alleged to have occurred August 20, 1932. On August 24, 1932, the petitioner, under proceedings had in the probate court of Shawnee county, was found to be a person of feeble mind and was committed to the state training school at Winfield. On January 25, 1933, an information was filed in the district court of Shawnee county charging petitioner with two felonies, *i. e.*, forging a bank check, and thereafter uttering said forged check. On February 10, 1933, under proceedings had in the probate court of Shawnee county, the petitioner was found

to be a person of sound mind. On April 20, 1933, he was tried in the district court on the above information. At the trial the petitioner entered a plea of not guilty and was regularly tried, the defense being that petitioner was insane at the time of the alleged commission of the offense. The court submitted two forms of verdict, one being so formed that by filling in the word "not" in an appropriate blank, it would return a verdict of not guilty, or if said blank was not so filled it would return a verdict of guilty. The other form of verdict, and which is the one returned by the jury is, omitting formal parts, as follows:

"We, the jury inpaneled and sworn in the above entitled case, do, upon our oaths, find the defendant, Frank Hodison, not guilty of the offense of forgery in the second degree, as charged in the first count of the information, but we further find that at the time of the alleged commission of the offense therein charged, the defendant, Frank Hodison, was a person of unsound mind.

"And we do further find the defendant, Frank Hodison, not guilty of the offense of forgery in the second degree, as charged in the second count of the information, but we further find that at the time of the commission of the offense therein charged the defendant, Frank Hodison, was a person of unsound mind."

On April 22, 1933, the court ordered the defendant committed to the asylum for the dangerous insane at the state penitentiary at Lansing until discharged according to law.

After the trial court had instructed the jury—and there is no complaint as to the instructions—the petitioner requested that three separate forms of verdict be submitted, and complaint is made because a form was used which permitted the jury to fill in the word "not" if a verdict of not guilty was to be returned, or to be omitted if a verdict of guilty was to be returned. We have examined the form and the instructions of the court and conclude that the defendant was not prejudiced in any manner on account of the forms submitted.

It is further contended that the verdict as returned is a verdict of not guilty, and that the statement, twice repeated, "We further find that at the time of the alleged commission of the offense therein charged, the defendant, Frank Hodison, was a person of unsound mind" is surplusage and should be . disregarded; that the entire verdict is not a finding that defendant was acquitted *on the ground* that at the time of the commission of the alleged offense he was a person of unsound mind, under R. S. 62-1532; that, under the rule laid down in *State v. Reddick,* 7 Kan. 143, the court cannot look

outside the verdict to ascertain what the jury intended by the verdict, and, therefore, the writ should be allowed. However, in *In re Mooney,* 89 Kan. 690, 132 Pac. 217, it was said:

"Where the verdict in a criminal case is ambiguous, reference may be had for its interpretation to the instructions and to other forms of verdict prepared by the trial judge, which after submission to the jury were filed with the clerk; and where in view of the light so afforded it is clear that the verdict was intended as one of guilty, it will be so treated." (Syl. ¶ 1.)

"In an early case this court held that the interpretation of the verdict in a criminal case cannot be aided by reference to the instructions. (*The State v. Reddick,* 7 Kan. 143, 155.) But this rule was applied in a capital case, upon a direct attack, and only with respect to the statutory requirement that, where there may be a conviction of different degrees of an offense, a verdict of guilty must specify the degree. (Crim. Code, ¶ 239.) It has been well said that the doctrine of that decision ought not to be extended. (*The State v. Jennings,* 24 Kan. 642, 661.) There is no reason in the nature of the matter why in interpreting the verdict in a criminal case, a court should not make use of anything in the proceedings that serves to show with certainty what the jury intended. And that course finds approval in the authorities. (*In re McLean,* 84 Kan. 852, 115 Pac. 647, 35 L. R. A., n. s., 653.)" (p. 692.)

*State v. Wolkow,* 110 Kan. 722, 205 Pac. 639, cited by petitioner, is not in point. While the court, in preparing the form of verdict, might well have followed the statute more closely than it did, we think it quite apparent that the verdict was one of not guilty on the ground of insanity.

It is further contended that the petitioner, having been declared sane under the proceedings had in the probate court, cannot now be committed to the asylum for the criminal insane. Under R. S. 62-1532 it is provided that where a defendant is acquitted on the ground that he was insane at the time of the commission of the alleged offense, he shall be committed to the state asylum for the dangerous insane and "No such person shall be liberated from such institution except in pursuance to an order made by the state board of administration after a full hearing and a finding and determination by said board that such person is wholly recovered and restored to his or her right mind and that no person will be endangered by his or her discharge, and upon such finding and determination such person shall be entitled to immediate discharge." The statute has been held constitutional. See *In re Timm,* 129 Kan. 126, 281 Pac. 863. It contemplates a situation such as we have here, except that in the case at bar the defendant, since commission of the offense, has been

declared sane in a probate court inquiry. Under the terms of the statute, however, it requires more than a restoration to entitle the defendant to his liberty. The statute specifies the body which shall determine not only whether the defendant is wholly recovered and restored to his right mind but, also, that no person will be endangered by his or her discharge.

The petitioner calls our attention to *In re Clark,* 86 Kan. 539, 121 Pac. 492, and especially to the concurring opinion of Johnston, C. J. (p. 553), contending that under the opinion and concurring opinion a person found sane cannot be committed to the asylum for the criminal insane, and to *In re Beebe,* 92 Kan. 1026, 142 Pac. 269, which it is contended is to the same effect. In *In re Ostatter, Petitioner,* 103 Kan. 487, 175 Pac. 377, the question was again before the court. Ostatter was charged with murder. Before his trial, under appropriate proceedings, he was found to be insane and committed to the asylum for the dangerous insane; later the superintendent of the hospital certified that Ostatter had greatly improved and in his opinion had wholly recovered his sanity and that no person would be in danger by his liberation and discharge from the asylum, and he was thereupon returned to Reno county and tried on the murder charge, the jury returning a verdict acquitting him on the ground he was insane when he committed the offense. He was again committed to the asylum. Thereafter he prosecuted an application for a writ of habeas corpus, but not invoking the statute in question here. In disposing of his contentions, however, this court, speaking through Mr. Chief Justice Johnston, said:

"The petitioner secured an acquittal of the crime of murder on the ground that he was insane when the offense was committed. That verdict established his status, and under the law he is to be regarded as insane and dangerous until a showing has been made as the law provides, that he has been restored to his right mind, and that no one would be in danger by reason of his being at large. . . . It has also been decided that one acquitted of murder on the ground that he was insane when he killed the deceased, is deemed to be insane and unsafe to be at large, and that he must remain in custody until it is shown in the way prescribed by statute that he is restored to sanity and is no longer dangerous. (*In re Beebe,* 92 Kan. 1026, 142 Pac. 269.)" (pp. 489, 490.)

In *In re Wadleigh,* 108 Kan. 682, 683, 197 Pac. 217, cited by petitioner, this court said:

"The probate court does not have jurisdiction to consider an application to

discharge a lunatic whose lunacy has been adjudged as a pertinent incident to a criminal prosecution and who is incarcerated in the state asylum for the dangerous insane by virtue of such judgment. The statute reads [quoting statute now appearing as R. S. 62-1532]. But the petitioner was not committed to the state asylum for the dangerous insane under the section of statute just quoted. If he had been so committed, then he could only be discharged, as the state contends, by order of the state board of corrections (or its legal successor) after full hearing and determination of the propriety of his release." (p. 683.)

The specific point raised in the case at bar has not been before the court, but it logically follows from what has been said in the cases to which reference has been made that the defendant, having procured an acquittal on the ground that he was insane at the time of the commission of the offense, can only procure his release under the terms of the statute by which he secured such acquittal, and that he must be committed to the state asylum for the dangerous insane until, after a full hearing by the board of administration a finding is made that he is wholly recovered and restored to his right mind and that no person will be endangered by his discharge.

The application for the writ of habeas corpus is denied.