230 P.2d 966

**STATE v. REED et al.**

**No. 5313.**

Supreme Court of New Mexico.

March 16, 1951.

Rehearing Denied May 23, 1951.

. Robert Hoath LaFollette, Albuquerque, for appellants.

Joe L. Martinez, Atty. Gen., Philip H. Dunleavy, Asst. Atty. Gen., H. A. Kiker, Special Asst. Atty. Gen., for appellee.

Robert B. Bennett, Albuquerque, for appellants, on motion for rehearing.

SWOPE, District Judge.

The appellant, Kenneth Reed, was convicted by a jury in the District Court of Union County, which is located in the Eighth Judicial District, of stealing a bull calf and of unlawfully branding it, contrary to the provisions of Sections 41–411 and 41–419, New Mexico Statutes 1941 Annotated. His wife, the appellant, Rebecca Reed, was convicted of unlawfully branding the bull calf contrary to the provisions of Section 41–411, but was not convicted of stealing it. They were both sentenced to be imprisoned for a term in the State Penitentiary.

Several grounds are advanced by the appellants for reversal. They contend that the District Court proceeded without jurisdiction in this case due to the fact that the Judge who heard the case had been requested to hear it by the resident Judge before the District Court had acquired jurisdiction of the case. The record shows that the resident Judge, Fred J. Federici, upon the suggestion of the attorneys for the appellants that he not hear the case and with the approval of the attorneys for the appellee, signed an Order which was entered in this case on December 12, 1949, requesting E. T. Hensley, Jr., Judge of the Ninth Judicial District, to preside in the case. The record also shows that a stipulation, in which it was agreed that Judge Hensley should preside in the case in all its phases and to its final disposition, was signed by both parties and filed in the case the same day. The information was filed in the District Court on December 13, 1949, after Judge Hensley had presided at the preliminary hearing that day. Judge Hensley also presided during the trial of the case, which commenced on January 3, 1950. By virtue of the provisions of Article 6, Section 15, of the New Mexico Constitution, which provides, in part, as follows: "Any district judge may hold district court in any county at the request of the judge of such district. * * *" District Judges often request judges from other Judicial Districts in the State to act for them in any and all matters that may require court action in their Districts during specified periods of time. Under such a request, a visiting judge would have jurisdiction to hear all matters requiring action during the period of

his designation whether they were pending in the Court at the time the request was made or were filed at a later date. It is not necessary that the matter be pending in the Court at the time the request is made. The present case had not yet been filed with the Court at the time Judge Hensley was requested to hear it, but the resident judge as well as all others concerned expected it to be filed and to be ready for trial within the next few days. All of the parties agreed that Judge Hensley should hear the case, and no one objected in the lower court. There is no merit in the contention of the appellants that the District Court was without jurisdiction to proceed in this case. See, In re Santillanes, 47 N.M. 140, 138 P.2d 503; Hoglan v. Geddes, 25 Wyo. 436, 172 P. 136; City of Oakland v. Hart, 129 Cal. 98, 61 P. 779; Kane v. Ferguson, 195 Okl. 292, 157 P.2d 194.

The appellants also contend that there was not sufficient evidence to warrant submission of the case to the jury. The following facts are supported by the evidence. On April 25, 1949, a Hereford bull calf was born to a cow owned by Olen Caviness who operates a ranch near Maxwell in Colfax County and is a breeder of registered Hereford cattle. The mother and sire of the calf were both registered Herefords, and bore typical red and white Hereford markings. The mother not only had the usual Hereford markings, but she also had some markings that were unusual, such as, the red on the side of her neck came up on each side of her jaw and the white on her neck was broken by red hair into it. Also, the red on her front legs went down to her ankles farther than on most Herefords. She also had a white spot on her right knee and a fine curly coat of hair. The markings on the calf were very similar to those on the cow, including the white spot on the right knee. It also had a fine coat of hair like its mother. Evidence was also properly admitted over objection that other calves from the mother and sire of the calf in question had similar markings and characteristics.

Caviness saw the calf on April 25th, and on the 27th he placed a tattoo mark, which was the number 11, on the inside of its left flank so that he could identify it without any question. This was done because some of his calves had been disappearing, and the calf was too young to brand. The tattoo mark was made with an instrument which punched holes in the calf's hide, and then the ink was smeared so that it would sink into the holes and the color would remain. Each number covered an area of about one-half an inch. Caviness saw the calf on the 28th and 29th, but on May 1st when he went back to his pasture, he found the calf's mother standing alone and bawling. He spent the rest of the day searching for the calf on his ranch, but was unsuccessful

and, on May 2d, he reported the loss to the local cattle inspector furnishing him with a description of the calf. The inspector then began searching the entire area for the calf. Finally, on October 1st, he located a calf, answering the description of the calf owned by Caviness, on a ranch operated by the appellants, which was located in Union County about 80 miles from the Caviness ranch. On October 6th, in the presence of several persons, including Caviness, Mrs. Reed and the Sheriff, the calf was roped and examined, and Caviness stated that it was his calf. Mrs. Reed denied this, and during the ensuing argument she managed to turn the calf loose, but the officers caught the calf again and took it to Raton.

The appellants had considerable difficulty explaining the presence of the tattooed calf on their ranch. They admitted that they had never tattooed any of their cattle and advanced the theory that two of their enemies might have stolen the calf from Caviness and placed it on their ranch, or might have put the tattoo marks on one of their calves in order to cause them trouble. To support this theory they produced testimony to the effect that their son-in-law had worked on the ranch in 1948 and had been discharged by Mrs. Reed that year for inefficiency; that he had been reemployed later, but, after a quarrel, had quit in September 1949, and that he then went to work for a man who had attempted to murder Reed in 1933. They also pointed out that the tattoo marks on the calf had not enlarged although the calf that was lost would have grown since its disappearance.

Evidence was also introduced by the appellants to establish that they were not in the vicinity of the Caviness ranch between April 29th and May 1st, but one witness for the appellee stated that he saw Mr. Reed in Maxwell on April 29th. The evidence also showed that the pasture in which the cow and calf were last seen by Caviness on April 29th was located near Maxwell and was about two miles west of U. S. Highway 85 and was along a dirt road which led west from Highway 85 and went farther west to a ranch owned by Mrs. Reed's brother whom the Reeds had visited.

In support of her claim that the calf in question belonged to the appellants, Mrs. Reed first claimed that she had witnessed its birth to their roan cow, but later she admitted that she had not actually witnessed the birth but had assumed that the calf had been born to the roan cow because the cow appeared to have been sucked by a calf on May 22d. She stated, however, that the first time she saw the calf was on June 19th when they branded all of their calves. Reed admitted that he branded the calf, and Mrs. Reed testified that she participated in the branding by vaccinating the calf at the same time.

■■ It is obvious that the proof, while for the most part circumstantial, was clearly sufficient to go to the Jury. The Jury considered all of the evidence, including the testimony of some of the witnesses that the tattoo should have enlarged with the growth of the calf, and on the basis of all the evidence they found the appellants guilty. Inasmuch as there was substantial evidence to support the verdicts, they will not be disturbed by this Court. See, State v. Wilson, 25 N.M. 439, 184 P. 531; State v. Ulibarri, 28 N.M. 107, 206 P. 510; Territory v. Harrington, 17 N.M. 62, 121 P. 613; State v. Liston, 27 N.M. 500, 202 P. 696; State v. Ortega, 36 N.M. 57, 7 P.2d 943.

■■ The appellants also contend that the trial court erred by refusing to give their requested instruction on circumstantial evidence. The court instructed the jury upon this subject as follows: "15. You are instructed that while you must be convinced of the guilt of the defendant from the evidence beyond a reasonable doubt in order to warrant a conviction, still the proof need not be by direct evidence of persons who saw the offense committed. The acts constituting the crime may be proved by circumstances. And by circumstantial evidence is meant the proof of such facts and circumstances connected with or surrounding the commission of the crime charged, as tend to show the guilt or innocence of the accused. And if such facts and circumstances are sufficient to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, then such evidence is sufficient to authorize the jury in finding a verdict of guilty. But you are instructed that before you would be authorized to find a verdict of guilty against the defendant where the evidence is circumstantial, the facts and circumstances shown in the evidence must be incompatible upon any reasonable hypothesis with the innocence of the defendant and incapable of explanation upon any reasonable hypothesis other than that of the guilt of the defendant."

The appellants requested that the jury be also instructed as follows: "The court instructs the jury that, where circumstances alone are relied upon by the prosecution for a conviction, the circumstances must be such as to apply exclusively to the defendant, and such as are reconcilable with no other hypothesis than the defendants' guilt, and they must satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt."

A comparison of the last sentence of the trial court's instruction with the requested instruction reveals that they are substantially the same, but are merely stated in different language. The instruction given by the trial court was sufficient. See State v. Johnson, 37 N.M. 280, at page 288, 21 P.2d 813, 89 A.L.R. 1368. The court was not required to give a requested instruc-

tion which was cumulative. See, State v. Jackson, 47 N.M. 415, 143 P.2d 875; State v. Romero, 34 N.M. 494, 285 P. 497; State v. Martinez, 34 N.M. 112, 278 P. 210.

The appellants complain that because of the trial court's refusal to give their requested instruction their theory that the calf might have been planted on their ranch by their enemies or that their enemies might have placed the Caviness tattoo on one of their calves for the purpose of framing them, was not properly presented to the jury. There is no merit in this contention for the reason that the requested instruction in no way expounds their theory of the case. It was just an abstract statement of the law which had already been covered by the court's instruction.

The appellants further contend that the trial court should have instructed the jury that since the calf bore their brand when it was found this fact would constitute prima facie evidence that they owned the animal. This contention is based upon Section 42–704, N.M.S.1941 A., which provides as follows: *"Description of bovine animals—Proof of brand—Prima facie evidence of ownership.*—In the prosecution of any offense arising under the laws of this state in regard to the unlawful taking, handling, killing, driving or other unlawful disposition of animals of the bovine kind, the description 'neat cattle' in any indictment shall be deemed sufficient, and the proof of the brand by a certified copy of

the registration thereof in the brand book, under the seal of the cattle sanitary board, certified to by the secretary of said board, shall be sufficient to identify all horses, mules, asses or neat cattle, and shall be prima facie proof that the person owning the recorded brand is the owner of the animal branded with such brand."

 It is obvious that the Statute merely sets up a procedure that may be followed by the State in a criminal prosecution of this kind to prove ownership of the animal involved. The Statute was not intended to be available to a defendant in such a case.

The jury returned verdicts finding the appellants both guilty of the "first count of the information," and they found that Kenneth Reed was also guilty of the "second count of the information." The information, as originally filed, contained five counts. At the opening of the trial the District Attorney announced that he was abandoning Count 2 of the information and later during the trial Count 2 and also 3 and 5 were dismissed by the court upon his motion.

Count 1 of the information charged that the appellants: "Count 1: Did then unlawfully brand or mark or cause to be branded or marked on the right shoulder with their brand, to-wit: M— one head neat cattle, a bull calf, the property of Olen Caviness, contrary to the provisions

of Section 41–411, New Mexico Statutes 1941 Annotated."

Count 2 of the information, as originally filed, which count was dismissed, charged that they: "Count 2: Did then and there knowingly and unlawfully deprive Olen Caviness, the owner thereof, of the immediate possession of one head neat cattle, a bull calf by applying the same to their, Kenneth Reed's and Rebecca Reed's own use, contrary to the provisions of Section 41–419, New Mexico Statutes, 1941 Annotated."

And, Count 4 of the information, as originally filed, charged that they: "Count 4: Did then and there steal one head neat cattle, to-wit, a bull calf, the property of Olen Caviness, contrary to the provisions of Section 41–419, New Mexico Statutes, 1941 Annotated."

The appellants contend that the jury was confused and made a mistake when they found Kenneth Reed guilty of the second count of the information for the reason that Count 2 of the information had been dismissed by the Court before the case went to the jury. The record shows, however, that the Court instructed the jury as follows:

"This is a criminal case in which the State of New Mexico, by an information filed in this Court on the 13th day of December, A.D., 1949, charges as amended, in count 1·

"That the defendants did on the 6th day of October, A.D., 1949, unlawfully brand or mark or cause to be branded or marked on the right shoulder with their brand, to-wit: M–, one head neat cattle, a bull calf, the property of Olen Caviness, contrary to the provisions of Section 41–411, New Mexico Statutes 1941 Annotated. and in count 2 as amended

"That the defendants on the 6th day of October, A.D., 1949 did then and there steal one head neat cattle, to-wit, a bull calf, the property of Olen Caviness, contrary to the provisions of Section 41–419, New Mexico Statutes 1941 Annotated."

And that the Court also instructed the jury as follows:

"The material allegations of the first count of the information which must be proved to your satisfaction and beyond a reasonable doubt by the evidence introduced in this case, are:

"(a) That the defendants Kenneth Reed and Rebecca Reed, or either of them, unlawfully branded with their brand a bull calf then the property of Olen Caviness;

"(b) That said act of branding occurred in Union County, State of New Mexico, on the 19th day of June, 1949, or at some other time within three years prior to December 13, 1949, the date the information was filed in this case.

"The material allegations contained in the information in count 2 thereof and which must be proved to your satisfaction beyond a reasonable doubt by the evidence introduced in this case are:

"(a) That the defendants, Kenneth Reed and Rebecca Reed, or either of them, stole one neat cattle, that is a bull calf, then the property of Olen Caviness;

"(b) That said offense occurred in the County of Union, State of New Mexico, on the 29th day of April, 1949, or at some other time within three years prior to the 13th day of December, 1949, the date the information was filed in this case."

It is obvious that the count referred to by the Court as being Count 2, as amended, was Count 4 of the original information.

It is well settled that if there is any doubt about a verdict this court is entitled to interpret the verdict by reference to the whole record and particularly by reference to the instructions given by the lower court. See Hodison v. Rogers, 137 Kan. 950, 22 P.2d 491, 88 A.L.R. 1080; Crump v. Commonwealth, 215 Ky. 827, 287 S.W. 23; People v. Bailey, 391 Ill. 149, 62 N.E.2d 796.

There can be no doubt in this case that the jury understood when the case went to the jury that only two charges remained in the information, and that they also understood what those charges were. It is interesting to note that this question was not raised by the attorney for appellants in the lower court, in fact, there was no doubt in his mind about the matter, because after the appellants had been sentenced he moved the court to vacate the judgment and sentence imposed on Kenneth Reed "under the charge contained in Count 2 of the information, as amended," and later he announced that Reed was appealing his conviction "under Count 2 of the information, as amended," to the Supreme Court.

We are unable to find any error in the record, therefore, the judgment and sentence will be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COORS, JJ., concur.

COMPTON, J., not participating.